J-A32042-16

2017 PA Super 47

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PATRICK R. REESE, | |
| Appellant | No. 831 EDA 2016 |

Appeal from the Judgment of Sentence March 3, 2016
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-MD-0001992-2015

BEFORE:  DUBOW, J., RANSOM, J., and PLATT, J.[*]

OPINION BY PLATT, J.:                    **FILED February 27, 2017**

Appellant, Patrick R. Reese, appeals from the judgment of sentence imposed following his bench conviction of one count of indirect criminal contempt.[1]  We affirm.

We take the relevant facts and procedural history of this case from our independent review of the certified record.  By way of background, Appellant was a Senior Supervisory Special Agent in the Executive Protective Detail for former Pennsylvania Attorney General Kathleen G. Kane.  Appellant's responsibilities included the transportation and security of Ms. Kane.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4955.

This case arises from Appellant's violation of a protective order issued in 2014, in connection with the 35th Statewide Investigating Grand Jury. The Grand Jury examined the improper release of secret information from a prior 2009 grand jury, which included an inquiry into the finances of a former president of the Philadelphia branch of the National Association for the Advancement of Colored People (NAACP), the late J. Whyatt Mondesire. Information from the 2009 investigation was leaked to the Philadelphia Daily News, and was published in an article on June 6, 2014.

During the course of the Grand Jury proceedings, the Office of the Attorney General of the Commonwealth of Pennsylvania (OAG) became a subject. The Honorable William R. Carpenter, in his capacity as the supervising judge of the Grand Jury, appointed Thomas E. Carluccio, Esquire, as Special Prosecutor to investigate and prosecute any illegal disclosures. On August 27, 2014, Judge Carpenter entered a protective order (Protective Order) in that matter, which stated as follows:

> 1. The Office of the Attorney General, except upon specific authorization by this Court or the Special Prosecutor, shall refrain from any involvement in, or access to, the investigative efforts of the Special Prosecutor.
>
> 2. Employees of the Office of the Attorney General shall refrain from engaging in, or soliciting, any act of obstruction, intimidation or retaliation against any witness summoned by the Grand Jury in the Special Prosecutor's investigation.
>
> 3. All transcripts of Grand Jury testimony shall be given only from the stenographer or their employer directly to the Supervising Judge and the Special Prosecutor, no copy shall be given to the Attorney General's Office.

**4. Employees of the Office of the Attorney General shall not have access to transcripts of proceedings before the Grand Jury or Supervising Judge, exhibits, or other information pertaining to the Special Prosecutor's investigation. All information related to the work of the Special Prosecutor shall be kept in the custody of the Special Prosecutor and Supervising Judge**.

5. Any person, including employees of the Office of the Attorney General, who engage in any act of obstruction, intimidation or retaliation against a witness summoned by the Grand Jury in the Special Prosecutor's investigation may be prosecuted as set forth in 18 Pa.C.S.[A.] § 4955 (relating to violation of orders) and any other applicable provisions of the Crimes Code of Pennsylvania.

6. The Special Prosecutor shall serve a copy of this Order upon the Office of the Attorney General.

7. The contents of this Order are sealed, and shall not be disclosed (either verbally or in writing) by the Office of the Attorney General to any individual outside of the Office of the Attorney General under penalty of contempt of court.

(Protective Order, 8/27/14, Exhibit C-1) (original emphases omitted; emphasis added).

In response to a motion for reconsideration filed by the OAG, Judge Carpenter entered an order on September 17, 2014, modifying slightly the Protective Order. The amended order provided:

. . . [T]he following persons only shall be subject to Paragraphs 2 and 5 of said [Protective] Order:

1. Any person who has been sworn to Grand Jury secrecy.

2. Any person who has or had access to any Grand Jury information.

3. Any person associated with the J. Whyatt Mondesire proceedings and investigation.

Additionally, Paragraph 7 of said Order is modified to allow communication regarding the Order with counsel for a person subject to the Order, for purposes of appeal, and for any other, similar purpose required by law.

(Order, 9/17/14, Exhibit C-2).[2] The Grand Jury resulted in a presentment in December of 2014, recommending the filing of criminal charges against Ms. Kane, including perjury.

On August 6, 2015, the Commonwealth filed a criminal complaint charging Appellant with indirect criminal contempt for violation of the Protective Order. The Commonwealth alleged that, from September through December 2014, Appellant conducted searches of the OAG's email archive system, eVault, (eVault System), directed at gaining access to information he was prohibited from knowing under the Protective Order.[3] Among the

_____

[2] Relevant to the instant appeal, the court held a hearing on the OAG's motion for reconsideration of the Protective Order on October 17, 2014. (**See** N.T. Trial, 12/07/15, at 78-81). The court denied the motion, and on November 10, 2014, the OAG filed a petition for review of the Protective Order in our Supreme Court, arguing, *inter alia*, that the order was issued without notice or an opportunity to be heard. (**See** Appellant's Brief, at 36-38, 57); **see also** 42 Pa.C.S.A. § 722(5) (providing for Pennsylvania Supreme Court jurisdiction over appeals from final court of common pleas orders affecting grand jury investigations). Our Supreme Court denied the OAG's petition on December 19, 2014, by *per curiam* order.

[3] At trial, the IT Administrator for the OAG, Todd Niziol, was qualified as an expert in the use and operation of the eVault System. (**See** N.T. Trial, 12/07/15, at 93-94). He testified that the eVault System makes copies of emails that are sent from or received by the OAG. (**See id.** at 95). Any email that is sent to or from the office is automatically journaled or copied into the eVault System, which is entirely separate from the email system itself. (**See id.**). The eVault System also has a function where it audits all access to the system and records it to a database. (**See id.** at 100). Access to the system is restricted to a limited number of employees who have a

*(Footnote Continued Next Page)*

many searches that Appellant performed were searches of emails relating to Judge Carpenter and Special Prosecutor Carluccio.

On October 15, 2015, Appellant filed an Omnibus Pre-trial Motion, requesting that Judge Carpenter recuse himself from this case, and that the court dismiss the criminal complaint filed against him. The court denied the motion, following oral argument, on October 27, 2015.

The case proceeded to a bench trial on December 7, 2015, and the trial court found Appellant guilty of the above-stated offense. On March 3, 2016, the court sentenced Appellant to a term of not less than three nor more than six months' incarceration. This timely appeal followed.[4]

Appellant raises the following issues for our review:

I. Whether the [trial] court erred in denying [Appellant's] motion for recusal[?]

II. Whether the Commonwealth proved beyond a reasonable doubt that [Appellant] had notice of the Protective Order[?]

*(Footnote Continued)* ───────────

user name and password, and the system tracks those accessing it and their actions. (*See id.* at 98, 101). Mr. Niziol granted Appellant permission to access the eVault System in March 2014, and Niziol showed Appellant how to use it. (*See id.* at 111-13; Commonwealth's Exhibit 114). Appellant was one of only three non-IT staff members who had access to the eVault System in September 2014. (*See* N.T. Trial, 12/07/15, at 99, 113-14; Commonwealth's Exhibit 115).

[4] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on March 30, 2016. *See* Pa.R.A.P. 1925(b). The court entered an opinion on May 18, 2016. *See* Pa.R.A.P. 1925(a).

III. Whether the Commonwealth proved beyond a reasonable doubt that [Appellant's] searches of the office of attorney general "e-Vault" email archive system were conducted with wrongful or criminal intent[?]

IV. Whether the [trial] court erred in denying [Appellant's] motion to dismiss due to issuance of the Protective Order without notice or opportunity to be heard[?]

(Appellant's Brief, at 2-3) (unnecessary capitalization omitted).

In his first issue, Appellant challenges the trial judge's decision not to recuse himself from presiding over the bench trial. (*See id.* at 27-35). Appellant argues that because the Affidavit of Probable Cause to the Criminal Complaint and the evidence at trial identified Judge Carpenter as one of the individuals Appellant searched in the eVault System, there was a substantial doubt as to whether he could preside impartially over the trial. (*See id.* at 27-29, 34). Appellant also claims recusal was necessary because of certain public statements Judge Carpenter made in a supplemental opinion filed in the Kathleen Kane matter, including a reference to her as "citizen Kane." (*Id.* at 30; *see id.* at 30-34). Appellant argues that these statements indicated that Judge Carpenter had concluded Ms. Kane was guilty, and that there was a "likelihood of spillover prejudice" to him. (*Id.* at 33). This issue does not merit relief.

Our standard of review is well-settled:

[Our Supreme] Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or

unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

> As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion.

[A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned. It is presumed that the judge has the ability to determine whether he will be able to rule impartially and without prejudice, and his assessment is personal, unreviewable, and final. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.

*Commonwealth v. Kearney*, 92 A.3d 51, 60–61 (Pa. Super. 2014), *appeal denied*, 101 A.3d 102 (Pa. 2014) (citations and quotation marks omitted).

> The propriety of this decision [regarding recusal] is preserved as any other assignment of error, should the objecting party find it necessary to appeal following the conclusion of the cause. If the cause is appealed, the record is before the appellate court which can determine whether a fair and impartial trial were had. **If so the alleged disqualifying factors of the trial judge become moot**.

*Commonwealth v. Harris*, 979 A.2d 387, 392 (Pa. Super. 2009) (emphasis in original) (citations omitted).

We also note that, "[i]n general, a judge before whom contemptuous conduct occurs has the power to impose punishment for such conduct and appropriate sanctions without recusing himself. However, recusal is required if there is a running, bitter controversy between the judge and offender." *Commonwealth v. Debose*, 833 A.2d 147, 150 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1278 (Pa. 2004) (citation omitted).

Here, Appellant raised the issue of the trial judge's alleged bias prior to trial, and the judge concluded that he was fully capable of presiding over Appellant's case in a fair and impartial manner. (*See* Trial Court Opinion, 5/18/16, at 27). The court explained:

> The fact that the court order that was violated is under my signature, . . . that is true of all contempt cases. But I have no personal knowledge of any of the facts here and cannot be considered a material witness concerning the allegations against [Appellant].
>
> \* \* \*
>
> [T]he fact that I am named in the affidavit of probable cause does not create the appearance of impropriety. Here, as in any contempt proceeding, whether there are facts showing the order of the judge was violated is the issue. . .
>
> I do think the defense analysis of my [supplemental] opinion [filed in the Kane matter] is materially flawed. You must understand the context of that particular proceeding: The Attorney General was trying to end this case before the District Attorney investigated it, before a judge heard the results of that investigation at a preliminary hearing, assuming the DA found

probable cause, and before a judge and jury heard the evidence at trial.

Quite simply stated, a criminal trial is a search for the truth. I never said that the Attorney General was guilty. I never said what the truth was. All I said was that the truth should have the opportunity to be heard, that the truth was crying to be heard.

* * *

And that citizen Kane comment was taken out of the context in which it was made. I was pointing out how extraordinary that request of relief was, especially given the fact that the district attorney hadn't even had the chance to investigate completely the matter.

Then the defense points to the allegation, the alleged close relationship between [Appellant] and Attorney General Kane. In my mind, that has no bearing on my ability to be fair and impartial. I will properly decide this case. I have no prejudice against the Attorney General or against [Appellant].

(*Id.* at 28-29).

On appeal, Appellant fails to allege, let alone demonstrate with specific references to the record in this matter, that his trial was not fair or impartial. Instead, he focuses primarily on the potential for prejudice because the Affidavit of Probable Cause named Judge Carpenter as a subject of his email searches, and because of alleged "spillover" bias from the Kane matter. (*See* Appellant's Brief, at 27-35). Without a showing that he was actually prejudiced during these proceedings, "the alleged disqualifying factors of the trial judge become moot." **Harris**, **supra** at 392 (citation and emphasis omitted). Furthermore, Appellant does not allege, and the record is devoid of any evidence, of a running or bitter controversy between Judge Carpenter

and himself. ***See Debose***, ***supra*** at 150. Therefore, after review of the record, we conclude that Appellant has failed to demonstrate that he did not receive a fair and impartial trial as the result of Judge Carpenter's denial of the motion for recusal, and we discern no basis for finding an abuse of discretion. ***See Kearney***, ***supra*** at 60-61. Appellant's first issue merits no relief.

We will address Appellant's second and third issues together because they both challenge the sufficiency of the evidence supporting his indirect criminal contempt conviction. Specifically, in his second issue, Appellant claims the Commonwealth failed to establish that he had notice of the Protective Order. (***See*** Appellant's Brief, at 35-50). Appellant maintains there is no evidence that he was served with the Protective Order, that he was present during any discussion of the order, or that he received any communication describing its terms. (***See id.*** at 48-49). In his third issue, Appellant argues the Commonwealth failed to prove that he searched the eVault System with wrongful or criminal intent. (***See id.*** at 50-56). He contends that he had a non-criminal purpose for the searches, because he performed them in an effort to find out if anyone from the OAG's office was leaking information about the Grand Jury to the press. (***See id.*** at 50-51). These issues do not merit relief.

Our standard of review is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in

the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (*en banc*)

(citation omitted).

Section 4955 of the Crimes Code provides, in pertinent part: "**(a) Punishment.**—Any person violating any order made pursuant to section 4954 (relating to protective orders) may be punished in any of the following ways: . . . (2) As a contempt of the court making such order. . . ." 18 Pa.C.S.A. § 4955(a)(2).

. . . A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

[W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, [the appellate court is] confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion.

*Commonwealth v. Lambert*, 147 A.3d 1221, 1226 (Pa. Super. 2016)

(citations omitted).

We note, "[i]n any case, civil or criminal, . . . [e]vidence of conduct, circumstantial evidence, and logical inferences may suffice to prove certain facts[,]" including notice. **Commonwealth v. Staton**, 38 A.3d 785, 794 (Pa. 2012) (concluding evidence supported jury finding that appellant had equivalent or anecdotal knowledge of protection from abuse order even though he had never been served formally with order). Additionally, when making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order. **See Lambert**, **supra** at 1227.

Here, the record reflects that Appellant was head of Ms. Kane's security detail and her driver, that they spent a great deal of time together and had a close working relationship, and that he was one of her most trusted employees. (**See** N.T. Trial, 12/07/15, at 13-16, 51, 86-87). The record also shows that Ms. Kane was displeased with the scope of the Protective Order, she made it a priority to challenge it in court, and that the order and its implications were widely discussed in the executive office. (**See id.** at 19, 21-22, 52-53, 76-79).

Montgomery County Detective Paul Bradbury testified that, as part of the investigation of Ms. Kane, Special Prosecutor Carluccio provided him with audit results of the eVault System. (**See id.** at 136-37). Detective Bradbury explained that his attention turned to Appellant because it

appeared from Appellant's query terms that he may have attempted to gather information to interfere with the Grand Jury, or obtain information in violation of the Protective Order. (***See id.*** at 138-39). Detective Bradbury identified, from among the many search terms Appellant used, the email addresses for Judge Carpenter, Special Prosecutor Carluccio, and Mr. Carluccio's wife, who is a common pleas court judge. (***See id.*** at 140-42). Significantly, on December 3, 2014, as the Grand Jury was preparing its presentment against Ms. Kane, Appellant searched the eVault System using the terms "perjury," and "removal from office." (***Id.*** at 142-43).

The email subject lines that were returned by Appellant's searches included: "Protective Order," "Grand Jury-Fina-Protective Order," "Motion for Reconsideration," "Supreme Court Petition," "35th Grand Jury," "Witnesses," "Witness Date Change," "Subpoena," "Presentments," "Leak Investigation," and "Notice 123," which is the number for the Grand Jury. (Commonwealth's Exhibit 6; ***see also*** N.T. Trial, 12/07/15, at 145-46, 159).

The Commonwealth also entered into evidence several emails that the audit showed Appellant had previewed and opened. (***See*** N.T. Trial, 12/07/15, at 153-54). One of the emails chains, dated September 8, 2014, had the subject line "Protective Order," and Appellant opened it on September 10, 2014, two weeks after the court issued the Protective Order. (***See id.*** at 177; Commonwealth's Exhibit 51). The chain begins with an email from Ms. Kane to First Deputy Attorney General, Bruce Beemer. It reads:

> I believe our Motion doesn't quite hit the strong points in a clear and precise manner. It should make clear the law which requires a hearing and substantial evidence, the fact that order covers 800 people, requires no contact, intimidation, retaliation against witnesses while directing that OAG have no knowledge of the witnesses. We are a law enforcement agency that now has it's [sic] hands tied from any investigation or prosecution or civil suit because of this overbroad order and which violates the separation of powers. [The] Order violates a person's Constitutional right to counsel, and 1st Amendment rights to free speech as witnesses have to secrecy requirement [sic]. Also, this Order precludes us from initiating an investigation into the anticipated yet egregious leak last weekend that the OAG is a TARGET of a criminal investigation.

(Commonwealth's Exhibit 51). The two subsequent emails in this chain discuss the implications of the Protective Order, and one of the emails directly quotes from it. (*See id.*). Appellant also opened two emails on September 15, 2014, with the subject line "Notice 123." (*See* N.T. Trial, 12/07/15, at 167-69, 173-74; Commonwealth's Exhibits 34, 112). Both of the emails attached the OAG's Motion for Reconsideration of the Protective Order, which described the Protective Order and its prohibitions in detail. (*See* N.T. Trial, 12/07/15, at 167-69, 173-74; Commonwealth's Exhibits 34, 112). Another email chain Appellant opened, dated August 29, 2014, with the subject line "Protective Order," begins with an email from Mr. Beemer to Ms. Kane, describing the incident alleging witness intimidation that gave rise to Judge Carpenter's issuance of the Protective Order. (*See* N.T. Trial, 12/07/15, at 170-71; Commonwealth's Exhibit 54).

The evidence also demonstrated that Appellant opened multiple emails relating to Grand Jury witnesses and grand jurors in September and

November of 2014. (*See* N.T. Trial, 12/07/15, at 157-66; Commonwealth's Exhibits 20, 42, 48, 84-86). Detective Bradbury opined that the contents of these emails, when viewed in conjunction with the times at which Appellant read them, indicated that he was gaining real time information about the grand jurors, witnesses, and the timing of their testimony. (*See* N.T. Trial, 12/07/15, at 157-58, 164-65, 169).

David C. Peifer, Special Agent in Charge of the Bureau of Investigations at the OAG, testified that on September 11, 2014, at Appellant's request, he performed searches of the eVault System in an attempt to find any leaks of information about the Grand Jury to the press. (*See id.* at 49, 54-56). Mr. Peifer searched the system by running reporters' names and other terms he thought might reveal a leak, but found no results, and reported this to Appellant and Ms. Kane. (*See id.* at 57-61).

Thus, the evidence reflects Appellant was a close confidant of Ms. Kane, that she made it a priority to challenge the Protective Order, and that the order was widely discussed among those surrounding Appellant. The evidence further demonstrates that, after the court issued the Protective Order, Appellant deliberately chose specific search terms that on their face appear directed at gaining information pertaining to the Grand Jury, and not simply targeted at identifying leaks. Appellant's searches returned emails with subject lines directly relating to the investigation, including "Protective Order." Appellant then opened many of these emails, some of which discussed in detail and quoted from the Protective Order. Appellant gained

real time information relating to Grand Jury activity, in violation of the Protective Order's prohibition on OAG employees accessing any "information pertaining to the Special Prosecutor's investigation." (Protective Order, 8/27/14, ¶ 4; Exhibit C-1). Under such circumstances, we find ample evidentiary support for the trial court's determination that Appellant had notice of the Protective Order, and that he possessed the wrongful intent to violate that order. *See Lambert*, *supra* at 1226-27. Therefore, Appellant's second and third issues lack merit.

In his fourth issue, Appellant argues the trial court improperly issued the Protective Order without first providing notice or an opportunity to be heard to the OAG employees potentially impacted by it. (*See* Appellant's Brief, at 56-60). This issue does not merit relief.

Initially, we note Section 4954 of the Crimes Code governs the issuance of protective orders in criminal matters and provides as follows:

> Any court with jurisdiction over any criminal matter may, after a hearing and in its discretion, upon substantial evidence, which may include hearsay or the declaration of the prosecutor that a witness or victim has been intimidated or is reasonably likely to be intimidated, issue protective orders, including, but not limited to, the following:
>
> (1) An order that a defendant not violate any provision of this subchapter or section 2709 (relating to harassment) or 2709.1 (relating to stalking).
>
> (2) An order that a person other than the defendant, including, but not limited to, a subpoenaed witness, not violate any provision of this subchapter.

(3) An order that any person described in paragraph (1) or (2) maintain a prescribed geographic distance from any specified witness or victim.

(4) An order that any person described in paragraph (1) or (2) have no communication whatsoever with any specified witness or victim, except through an attorney under such reasonable restrictions as the court may impose.

18 Pa.C.S.A. § 4954. Therefore, courts have broad discretion to issue appropriate protective orders. *See id.*

With respect to the effect of entry of *per curiam* orders, our Supreme Court has stated:

In any appeal before us, this Court's entry of a *per curiam* order affirming or reversing the final order of a lower tribunal, after review and consideration of the issues on appeal to this Court, signifies this Court's agreement or disagreement with the lower tribunal's final disposition of the matter on appeal to us. An order of *per curiam* affirmance or reversal becomes the law of the case.

In the instance where this Court intends to not only affirm the result of the lower court decision but also the rationale used by the lower court in reaching that decision, we would enter the appropriate order affirming on the basis of the opinion of the lower court, elucidating the lower court's rationale where necessary or desirable. Our entry of an order of *per curiam* affirmance on the basis of the lower court's opinion, thus, means that we agree with the lower court's rationale employed in reaching its final disposition.

*Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996) (emphasis omitted).

Here, as referenced above, our Supreme Court denied by *per curiam* order the OAG's petition for review of the Protective Order, in which the office raised the issues of lack of notice and opportunity to be heard. In that

order, the Court stated in relevant part, "per the opinion of the Supervising Judge William R. Carpenter, the purpose of the protective order, entered per the authority of 18 Pa.C.S.A. 4954, 'was/is to prevent the intimidation, obstruction and/or retaliation, in the ordinary sense of those words . . . . [and] was never intended to prevent the [Office of Attorney General] from carrying out its constitutional duties.'" ***Pennsylvania Office of the Attorney General v. Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury***, No. 171 MM 2014 (Pa. filed Dec. 19, 2014) (record citation omitted).

Thus, our Supreme Court has considered the validity of the Protective Order, and indicated its support of the trial court's disposition of the matter. ***See Tilghman***, ***supra*** at 904. We cannot revisit this decision. Appellant's final issue on appeal does not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/27/2017</u>