J-S22044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CURTIS WALLACE HALL, | |
| Appellant | No. 894 MDA 2016 |

Appeal from the Judgment of Sentence May 20, 2016
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0003165-2015

BEFORE: SHOGAN, J., MOULTON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED APRIL 25, 2017**

Appellant, Curtis Wallace Hall, appeals from the judgment of sentence imposed after his jury conviction of resisting arrest and loud, disturbing, unnecessary noise.[1] We affirm.

We take the following facts from the trial court's July 25, 2016 opinion and our independent review of the certified record.

> On April 6, 2015, Detective Dennis Simmons [] and Detective Donald Heffner [] of the Harrisburg Bureau of Police Organized Crime and Vice Control Unit were in plain clothes in an unmarked vehicle patrolling the city of Harrisburg. At approximately 3:00 P.M., they were in the area of 13th and Swatara Streets when they heard loud music coming from nearby. As they turned east onto Swatara Street, Detective

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5104 and Local Ordinance § 3-343(2)(A).

Simmons observed a red Dodge Magnum parked on the south side of the street that was the source of the loud music. The music was so loud that the windows on the vehicle were vibrating. When they passed the vehicle, Detective Simmons observed Appellant to be in the driver's seat. At that time, Detective Simmons made the decision to issue a citation.[a] Since they were in an unmarked vehicle, they had to drive around the block to get back to where the vehicle was parked.

[a] There is a city ordinance in Harrisburg which prohibits loud noise and loud music, and a violation occurs when you can hear the music/noise within fifty (50) feet of where you are standing. It is a summary citation which Detective Simmons testified that he has issued numerous times as both a uniformed officer and a detective.

By the time the detectives came back around and parked on Swatara Street, Detective Simmons observed Appellant in the yard to the rear of 401 South 13th Street. The yard was fenced in, but the gate was open. When Detective Simmons exited his vehicle, Appellant was in the yard of the residence walking towards the rear entrance to the building.

Detective Simmons approached Appellant in the yard, identified himself as police and asked for [Appellant's] identification. Although Detective Simmons testified that he had recognized Appellant from previous encounters, he did not know his name at that time. Appellant refused to produce his identification and asked, in an elevated voice, "why are you running up on me?" Detective Simmons again asked for Appellant's identification and Appellant continued to ask why. Detective Simmons then explained that he was going to receive a citation for the loud music coming from his vehicle.

While talking to Detective Simmons, Appellant tried to enter the rear door of the residence on at least two (2) occasions, as well as reached into his pockets a couple of times, and was directed to stop. Appellant began to tense up and he appeared to be physically aggressive towards [the officer,] as Appellant was clenching his fists and asking over and over in an elevated volume why Detective Simmons was "running up on him". Detective Simmons again explained that he was going to issue a citation for the noise, and needed Appellant's identification in order to do so. Appellant stated that Detective Simmons had

no right to stop him, and Detective Simmons responded that it was an official police investigation and Appellant was not free to leave at that point. Appellant continued to repeat that he had no right to stop him and that he had no right to be on his property.

Since Appellant was not complying with verbal commands, and was becoming [increasingly] agitated and aggressive, Detective Simmons made the decision to detain Appellant, primarily for officer safety. At that point, Detective Simmons did not know whether Appellant was going to flee or produce a weapon. Detective Simmons grabbed Appellant's left arm in an attempt to detain him, and Appellant pulled away from him. Detective Simmons gave repeated commands to Appellant to show his hands and Appellant refused. Appellant then began to struggle with Detective Simmons—pulling away from him, and shifting his weight back and forth from his dominant foot to his other foot in what Detective Simmons described as a "fighting stance". At this point, Detective Heffner came over to assist.

Appellant continued to be uncooperative, moving his arms forward, pulling away from both Detective Heffner and Detective Simmons. The detectives were forced to push Appellant against a wall in order to gain control of his arms. Appellant continued to struggle, and eventually was handcuffed. At this time, Detective Heffner radioed for additional units as backup.

In the midst of the struggle between Appellant and the detectives, several people came out of the residence where the incident began and started to gather around. One of those people was Appellant's brother and co-defendant, Donell Charles Hall [],[2] who approached the scene and began yelling at them and asking why they were wrestling his brother. . . . At this time, there were approximately fifteen (15) to twenty (20) people that had come out of their residences to see what was going on. The crowd was yelling and cursing, and ultimately made the entire situation chaotic.

(Trial Court Opinion, 7/25/16, at 2-5) (record citations omitted).

_____

[2] Donell Charles Hall filed a separate appeal of his judgment of sentence related to his participation in this matter, at docket number 895 MDA 2016.

On May 20, 2016, a jury convicted Appellant of the aforementioned charges. The same day, the court sentenced him to twenty-four months' intermediate punishment, which included ninety days in the Dauphin County Work Release Center, three months of house arrest with electronic monitoring, and eighteen months of probation. Appellant timely appealed on May 25, 2016, and filed a concise statement of errors complained of on appeal, pursuant to the court's order, on June 8, 2016. The trial court filed an opinion on July 25, 2016. *See* Pa.R.A.P. 1925.

Appellant raises one issue for our review:

I. Whether the evidence at trial was insufficient to prove that Appellant committed the crime of resisting arrest where the Commonwealth failed to prove beyond a reasonable doubt that substantial force was required to overcome Appellant's reaction to police and where the Commonwealth failed to prove that Appellant's actions created a risk of bodily injury to a public servant?

(Appellant's Brief, at 4).

Our standard of review is well-settled:

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Reese*, 2017 WL 750789, at *5 (Pa. Super. filed Feb. 27, 2017) (citation omitted). Pursuant to section 5104 of the Crimes Code:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104.

In this case, Appellant argues that the evidence was insufficient to support the crime of resisting arrest where "the Commonwealth failed to prove that substantial force was required to overcome [his] reaction, and that [his] actions created a risk of bodily injury to a public servant." (Appellant's Brief, at 10). We disagree.

The statute, it is clear, does not require the aggressive use of force such as a striking or kicking of the officer. A person resists arrest by conduct which "creates a substantial risk of bodily injury" to the arresting officer **or** by conduct which justifies or requires "substantial force to overcome the resistance."

*Commonwealth v. Miller*, 475 A.2d 145, 146 (Pa. Super. 1984) (footnote omitted) (emphasis added). In other words, "the statute includes the disjunctive phrase 'or employs means justifying or requiring substantial force to overcome resistance.'" *Commonwealth v. Lyons*, 555 A.2d 920, 925 (Pa. Super. 1989) (concluding that elements for resisting arrest were met where it took four deputies to subdue appellant, thereby requiring substantial force "to overcome appellant's resistance to the arrest.") (citations omitted).

Here, the trial court explained:

Detective Simmons testified that he initially approached Appellant in the yard and asked for his identification so that he could issue a citation for the noise violation. (*See* N.T. Trial, 5/19/16, at 18, 20). Appellant refused to provide identification and was uncooperative with verbal commands to do so. (*See id.* at 20-21). After being told to stop reaching into the residence and his pants pockets, Detective Simmons decided to detain Appellant as he was not sure whether he was going to flee or produce a weapon. (*See id.* at 21-23). Appellant pulled away and struggled with Detective Simmons. (*See id.* at 23-24). He was flailing his arms and body around in an attempt to break the [] grasp [of Detectives Simmons and Heffner]. (*See id.* at 25-26, 60, 62-63). To gain control and leverage, the detectives were forced to push Appellant up against a wall. (*See id.* at 24-25). During the whole encounter Appellant was yelling and screaming at the detectives. (*See id.* at 20, 22, 88-90).

Even after the detectives were able to gain some control, Appellant continued to struggle and yell at the detectives as they were trying to handcuff him. (*See id.* at 26, 60). Detective Simmons stated that it took approximately five (5) minutes or longer to handcuff Appellant [and his co-defendant]. (*See id.* at 32). A compliant person typically takes about three (3) seconds to handcuff. (*See id.*)

Detective Heffner also testified during the trial, and his testimony corroborated that of Detective Simmons. Detective Heffner stated that Appellant became verbally aggressive as soon as Detective Simmons made initial contact with him. (*See id.* at 88). He further stated that after pushing Appellant against the wall, the detectives had to wrestle with him for a few minutes before being able to control him. (*See id.* at 89-90). Before the detectives were able to handcuff Appellant, a crowd began to form around them making the situation more volatile. (*See id.* at 90).

(Trial Ct. Op., at 6-7) (some record citations and record citation formatting provided).

The foregoing facts establish that, with the intent of preventing a lawful arrest, Appellant resisted police, requiring their use of substantial

force to overcome his resistance. **See Lyons**, **supra** at 925; **Miller**, **supra** at 146. Hence, we conclude that the trial court properly found that the evidence was sufficient to support Appellant's conviction. **See Reese**, **supra** at *5. Appellant's issue does not merit relief.[3]

Judgment of sentence affirmed.

_____

[3] Neither are we legally persuaded by Appellant's reliance on **Commonwealth v. Rainey**, 426 A.2d 1148 (Pa. Super. 1981). (**See** Appellant's Brief, at 11-14). In **Rainey**, officers woke the defendant from a drunken stupor, handcuffed him, and were escorting him to the police vehicle when he attempted to flee. **See Rainey**, **supra** at 1148-49. To thwart that attempt, the officer grabbed the defendant by the sleeve and he "began to shake himself violently, to wiggle and squirm in an attempt to free himself of the officer's grasp." **Id.** at 1149. This Court found that the Commonwealth failed to establish that the defendant resisted arrest, and that at most this was a minor scuffle, where the defendant merely attempted to "shake off the policeman[] detaining [him,]" and he neither "struck, nor struck out at the arresting officers; nor did he kick or push them." **Id.** at 1150. However, here, Appellant immediately was hostile to police, assumed a fighting stance against the arresting officer, clenched his fists, struggled violently against the arrest, and only was subdued minutes later after other officers arrived to assist, all in what the detectives assessed as a dangerous, volatile situation. These circumstances are distinguishable from the minor scuffle presented in **Rainey**. Moreover, **Rainey** only considered the amount of force a defendant must expend for a resisting arrest claim. It did not address the "substantial force" required by the police to overcome the defendant's resistance. Therefore, for all of these reasons, **Rainey** is inapposite to the circumstances presented here and is not legally persuasive.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2017