J-A17039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NICOLE KELLY, | |
| Appellant | No. 1411 EDA 2016 |

Appeal from the Judgment of Sentence December 18, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002679-2014

BEFORE:  GANTMAN, P.J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                        **FILED AUGUST 16, 2017**

Appellant, Nicole Kelly, appeals from the judgment of sentence imposed after her bench conviction of aggravated assault, possessing an instrument of crime, simple assault, and recklessly endangering another person.[1]  We affirm.

We take the following pertinent facts from the trial court's August 26, 2016 opinion and our independent review of the certified record.  On September 13, 2013, Complainant, Latoya Johnson, was in the 800 block of Allegheny Avenue drinking alcohol with Appellant and a friend.  (*See* N.T. Trial, 10/13/15, at 11-13).  The Complainant became intoxicated.  (*See id.*

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907, 2701, and 2705, respectively.

at 13-14). At trial, the Complainant testified that Appellant maced her, pulled out a knife, and stabbed her several times in the forehead, side, and stomach, until the Complainant finally passed out. (*See id.* at 14-16). She was taken by ambulance to the hospital, where she underwent surgery. (*See id.* at 19). Philadelphia Police Lieutenant Anthony Luca, who was dispatched to the scene, observed the distraught Complainant, who had multiple stab wounds and "a lot of blood . . . coming out of the stomach area and chest area." (*Id.* at 55).

The Commonwealth also introduced the Complainant's medical records from Temple University Health Systems into evidence, which identified fourteen stab wounds to her arms, face, chest, and torso resulting from the incident. (*See id.* at 77-78; *see also* Exhibit C-10, Temple Operative Report, at 1). The document also detailed Appellant's emergency surgery. (*See* Exhibit C-10, at 1-2).

Philadelphia Police Officer Michael Szelagowski and his partner observed Appellant walking southbound down Kensington Avenue, covered in blood on her hands, clothing and purse. (*See* Trial, 10/13/15, at 59-60). Appellant told the officers that she had not done anything wrong, and offered them money if they would let her go. (*See id.* at 60). When asked if she had any weapons, Appellant admitted that she had a knife in her purse. (*See id.*). The officers recovered the knife, which had an approximately six-inch blade. (*See id.* at 60-61). Officer Szelagowski

testified that Appellant had a cut on her hand, and, after she was arrested, she was taken to the hospital for treatment. (*See id.* at 64, 71).

Appellant testified on her own behalf. She stated that she knew the Complainant prior to the incident, and that she accompanied the Complainant and two other women to Kellis' Bar, before going across the street to drink outside on the sidewalk in front of Jack's Bar. (*See id.* at 83-85). According to Appellant, when the Complainant entered Jack's and began yelling at the bartender for saying that the Complainant had "mess[ed] with [her] car[,]" the bartender sprayed her with mace. (*Id.* at 87). Pursuant to Appellant's version of events, when she then went outside with the Complainant, and tried to help her, the Complainant began punching her in the face and bit her hand. (*Id.* at 87-88). Appellant then took out a knife and stabbed the Complainant in her side, although she knew that the Complainant did not have a weapon. (*See id.* at 90, 96). Appellant insisted that she did not stab the Complainant in the stomach or head, and maintained that she only stabbed her in the side five or six times, although confronted with the Complainant's medical report which reflected that she was stabbed fourteen times and required emergency surgery on her stomach. (*See id.* at 96-98).

The trial court found Appellant's testimony incredible. Specifically, it observed that Appellant's "insistence that she only stabbed the victim five or six times was belied by the medical records. . . .[A] person who believes

- 3 -

that he or she is justified in employing deadly force would not have fled the scene and then offered the police money to let her go." (Trial Court Opinion, 8/26/16, at 6).

On October 13, 2015, at the conclusion of the one-day trial, the court convicted Appellant of the foregoing offenses. On December 18, 2015, it sentenced her to an aggregate term of incarceration of not less than ten nor more than twenty years. On April 27, 2016, the court denied Appellant's post-sentence motion. Appellant timely appealed on May 6, 2016.[2]

Appellant raises two questions for this Court's review:

1. Where the Commonwealth failed to disprove [Appellant's] self-defense claim beyond a reasonable doubt, was the evidence insufficient as a matter of law?

2. Where the [C]omplainant, who had a blood alcohol level of .256%, had no recollection as to how or why she was stabbed, while the Appellant provided testimony that she acted in self-defense, was the verdict against the weight of the evidence and did the [trial] [c]ourt abuse its discretion in not granting a new trial?

(Appellant's Brief, at 3).

In her first issue, Appellant argues that the Commonwealth provided insufficient evidence to disprove her self-defense claim where the court based its decision solely on its credibility determination, failed to consider

---

[2] Pursuant to the trial court's order, Appellant filed a timely statement of errors complained of on appeal on May 26, 2016. *See* Pa.R.A.P. 1925(b). The court filed an opinion on August 26, 2016. *See* Pa.R.A.P. 1925(a).

the Complainant's intoxication, and the police did not recover the mace. (**See id.** at 13-22).  This issue lacks merit.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.  The Commonwealth may sustain its burden by means of wholly circumstantial evidence.  Further, the trier of fact is free to believe all, part, or none of the evidence.

**Commonwealth v. Reese**, 156 A.3d 1250, 1257-58 (Pa. Super. 2017) (citation omitted).

Pursuant to section 2702(a)(1) of the Crimes Code, "[a] person is guilty of aggravated assault if [she] . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"  18 Pa.C.S.A. § 2702(a)(1).  Serious bodily injury is defined as bodily injury "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

"Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent."  **Commonwealth v. Patrick**, 933 A.2d 1043, 1046 (Pa. Super. 2007), *appeal denied*, 940 A.2d 364 (Pa. 2007) (citation omitted).

> The Commonwealth need only prove the defendant acted recklessly under circumstances manifesting an extreme

- 5 -

indifference to the value of human life. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.

*Id.* (citations, brackets, and emphasis omitted).

The Commonwealth disproves a claim of self-defense "if it establishes at least one of the following: 1) the accused did not reasonably believe that [she] was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted). "The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe [she] was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save [herself] from that danger." *Id.* (citation omitted).

> To claim self-defense, the defendant must be free from fault in provoking **or escalating** the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the defendant used more force than reasonably necessary to protect against death or serious bodily injury.

*Id.* at 788 (citations and quotation marks omitted) (emphasis in original).

Instantly, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, it establishes that Appellant maced and recklessly stabbed the Complainant in her head and torso fourteen times, assuring that the Complainant was injured; she could not have reasonably

believed it was necessary to use deadly force to save herself from serious bodily injury where she admitted to knowing that the Complainant was unarmed; and she violated her duty to retreat where they were on a public street. **See id.** at 787. Additionally, after the Complainant collapsed on the ground, Appellant fled the scene, instead of calling 911. **See Commonwealth v. Rios**, 684 A.2d 1025, 1035 (Pa. 1996), *cert. denied*, 520 U.S. 1231 (1997) ("When a person commits a crime, knows that [she] is wanted therefor, and flees or conceals [herself], such conduct is evidence of consciousness of guilt[.]") (citation omitted). Finally, when approached by the police, Appellant offered the officers money to let her go.

Based on the foregoing, and our review of the record as a whole, we conclude that the trial court properly found that the Commonwealth provided sufficient evidence to establish that Appellant was not acting in self-defense when she committed the aggravated assault of the Complainant. **See Reese**, **supra** at 1257-58; **see also Smith**, **supra** at 787; **Patrick**, **supra** at 1046.[3] Appellant's first issue lacks merit.[4]

---

[3] We agree with the Commonwealth's observation that it was not required to prove motive because it is not an element of aggravated assault. (**See** Commonwealth's Brief, at 12); **see Commonwealth v. Manchas**, 633 A.2d 618, 623 (Pa. Super. 1993), *appeal denied*, 651 A.2d 535 (Pa. 1994) ("While proof of a motive for the commission of a crime is always relevant, it is not an essential element and is not necessary to warrant a conviction.") (citations omitted).

In her second claim, Appellant challenges the weight of the evidence to support her conviction. (**See** Appellant's Brief, at 22-30). Specifically, she maintains that her version of the incident is more reasonable because the mace was not found and Complainant was inebriated, making her unable to recall the incident and possibly rendering her violent. (**Id.** at 23). Appellant's issue does not merit relief.

"In a bench trial, as in a jury trial, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Hughes**,

_(Footnote Continued)_ _____

[4] We are not legally persuaded by Appellant's reliance on **Commonwealth v. Torres**, 766 A.2d 342 (Pa. 2001), because the case is factually distinguishable. (**See** Appellant's Brief, at 15-16). In **Torres**, a police officer testified that, at the scene, the victim told him that Torres struck him in the head with a wrench; however Torres denied having the tool and the police did not find one. **See Torres**, **supra** at 344-45. Torres testified on his own behalf that the victim punched him, and when he hit him back, the victim fell back and hit his head on a rock. **See id.** at 345. The parties stipulated that the victim received medical treatment, which revealed that he had a five to eight centimeter wound on his head; that the victim was on parole for aggravated assault; and that Torres had a reputation for peacefulness and honesty. **See id.** at 344. Based on these facts, the Supreme Court found that the Commonwealth's evidence only established that there was an altercation between the victim and Torres, it offered no motive for Torres to assault the victim other than self-defense, and that the medical records were consistent with both the defense and prosecution's version of events. **See id.** at 345. Additionally, the Court found that the stipulation of the parties as to Torres' reputation for peacefulness and the victim's history of violence supported the defense version of events. **See id.** at 345 n.1. This is inapposite to the facts herein where the medical records directly conflicted with Appellant's version of events; she fled the scene, thus supporting an inference of guilt; and attempted to bribe the police officers.

908 A.2d 924, 928 (Pa. Super. 2006) (citation and internal quotation marks omitted).

> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a [] verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal[.]" . . .

> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (citation omitted).

Instantly, Appellant again makes the same arguments as she did in her sufficiency challenge. (***See*** Appellant's Brief, at 22-30). She argues that the court failed to consider the Complainant's intoxication, which would have rendered her violent, and resulted in testimony that was "devoid of any details whatsoever." (Appellant's Brief, at 27; ***see id.*** at 25-27). She also complains that the court's credibility finding is not enough, on its own, "for finding evidence sufficient."[5] (***Id.*** at 24). Finally, she maintains that,

---

[5] We reiterate that the trial court did not rely on its credibility assessment alone, to convict Appellant. (***See*** Trial Ct. Op., at 6).

Complainant's testimony that Appellant sprayed her with mace was "suspect," where the police did not recover the mace. (*Id.* at 26).

However, Appellant misapprehends our standard of review. The trial court, as finder of fact, "[was] free to believe all, part or none of the evidence." *Hughes*, *supra* at 928 (citation omitted). It is not the province of this Court to re-weigh the evidence or make credibility determinations, but only to consider whether the trial court palpably abused its discretion in ruling on the weight claim. *See Boyd*, *supra* at 1275. Based on our review of the record, we will not disturb the trial court's ruling because there was no palpable abuse of discretion where the court found the Complainant credible, Appellant incredible, and the evidence supported the verdict. *See id.* at 1274-75. Appellant's second issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2017

- 10 -