J-S01033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JUSTIN B. LIGHTY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| V. | : | |
| | : | |
| | : | |
| JARA M. LIGHTY | : | |
| | : | |
| Appellant | : | No. 1273 MDA 2021 |

Appeal from the Order Entered September 16, 2021
In the Court of Common Pleas of York County Civil Division at No(s):
2014-FC-001467-03

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: JUNE 16, 2022**

Jara M. Lighty (Mother) appeals from the September 16, 2021 order

holding her in civil contempt of a prior custody order.  Mother contends that

the trial court erred or abused its discretion in finding her in contempt.  After

review, we agree with Mother and reverse the trial court's contempt order

against her.

The record reveals that Mother and Justin B. Lighty (Father) are the

parents of two minor children, a son (J.A.L.), who was born in October of

2006, and a daughter (J.S.L.), who was born in July of 2012 (collectively, the

Children).  On September 19, 2017, the trial court entered an order that set

forth a custody schedule and provided general custody conditions.  The order

was subsequently modified to prohibit the parties from administering corporal

_____

[*] Retired Senior Judge assigned to the Superior Court.

punishment. Moreover, the modifications provided that the parties had an "obligation to remain in their vehicles at the time of exchanges[,] and the parent who is relinquishing custody shall ensure that the child gets into the vehicle of the other parent unless the parent is picking up at school." Order, 2/8/19, at 4.

Thereafter, the parties agreed to a further modification of the custody order permitting Mother to relocate to North Carolina while retaining her custody rights. At the beginning of August 2021, while the Children were with Mother in North Carolina, the parties agreed that Mother would transport the Children from North Carolina to Pennsylvania. However, J.A.L. refused to get into Mother's car because he preferred to stay in North Carolina, and Mother was unable to return him to Pennsylvania on August 5, 2021. Mother later testified that due to J.A.L.'s size and strength, she is unable to physically force him into a vehicle. R.R. at 145a (N.T., 9/10/21, at 73);[1] **see also** Order, 9/16/21, at 3.

Approximately one week later, on either August 12 or 13, Father drove to North Carolina to transport J.A.L. back to Pennsylvania. Order, 9/16/21,

_____

[1] Although the notes of testimony from the September 10, 2021 hearing do not appear in the certified record, Mother included them in her reproduced record (R.R.). Father does not object to the accuracy of the R.R. and cites to it in his brief. Accordingly, we conclude that notes of testimony in the R.R. were filed with the trial court, and we will consider these documents in our review of this matter. **See C.L. v. M.P.,** 255 A.3d 514, 519 n.3 (Pa. Super. 2021) (*en banc*) (noting that "[w]hile the notes of testimony from this hearing are not included as part of the certified record, they are included as part of the reproduced record. As their veracity is not in dispute, we rely on the copy contained within the Reproduced Record." (citation omitted).

at 4. Father contacted the local police in North Carolina to aid in this transfer. R.R. at 114a (N.T., 9/10/21, at 42). Despite these efforts, J.A.L. refused to enter Father's car. *Id.*

On August 16, 2021, Father filed a petition for contempt alleging that Mother violated the custody order. After a hearing, the trial court concluded that Mother was in contempt of the custody order because on August 12 or 13, Mother failed to ensure that J.A.L. entered Father's vehicle during the custody transition. Specifically, the trial court found that although Mother had established that she provided an excuse as to why she was unable to get J.A.L. into the vehicle on August 5, 2021, she "did not indicate any reasons why she did not get [J.A.L. into Father's vehicle] when [F]ather himself appeared to pick up the child [on August 12 or 13]." Order, 9/16/21, at 5.

Mother filed a timely notice of appeal, and both Mother and the trial court complied with Pa.R.A.P. 1925.[2] On appeal, Mother avers that the lower court erred when it found her in contempt, given that: (1) J.A.L. refused to get into Father's vehicle; (2) Mother was physically incapable of forcing J.A.L. into the vehicle and further prohibited from utilizing corporal punishment to ensure custodial compliance; (3) a police officer was unable to convince J.A.L. to go back to Pennsylvania; and (4) Father did not satisfy his burden of proof

_____

[2] In its opinion, the trial court indicates that it "is unable to respond to the claims of abuse of discretion and/or error of law made by [Mother] as they are not in compliance with Pa.R.A.P. 1925(a)(2) and do not constitute a concise statement of errors made." Trial Ct. Op., 10/4/21, at 1 (unpaginated). However, we conclude that Mother's statement is sufficiently specific to facilitate appellate review.

in demonstrating that Mother had a willful and wrongful intent to violate the custody order. *See* Appellant's Brief at 4.

We review Mother's appeal bearing in mind the following principles:

On appeal from an order holding a party in contempt of court, our scope of review is very narrow, and we place great reliance on the court's discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. Absent an error of law or an abuse of discretion, we will not disrupt a finding of civil contempt if the record supports the court's findings.

In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order. To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent. Nevertheless, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.

If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven. The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply. The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.

*Thomas v. Thomas*, 194 A.3d 220, 225-26 (Pa. Super. 2018) (formatting altered and citations omitted).

The operative language of the custody order required Mother to "ensure that the child gets into the vehicle of the other parent . . . ." Order, 2/8/19,

- 4 -

at 4. The trial court concluded that Mother was in contempt because, pursuant to the order, it was Mother's responsibility to get J.A.L. into the car for custody transitions, and she failed to meet this requirement because J.A.L. refused to enter Father's vehicle. *See* Order, 9/16/21, at 4-5.

We reiterate that although we place "great reliance" on the trial court's finding of contempt, a mere showing of noncompliance with a court order alone is insufficient to establish civil contempt. *Thomas*, 194 A.3d at 225-26. Rather, "the act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent." *Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, 68 (Pa. Super. 2016) (citations omitted). "Unless the evidence establishes an intentional disobedience or an intentional disregard of the lawful process of the [trial] court, no contempt has been proven." *Id.* (citation omitted and formatting altered). When determining whether a party acted with wrongful intent to support a finding of contempt, the trial court should use common sense and consider the context of the party's actions. *Commonwealth v. Reese*, 156 A.3d 1250, 1258 (Pa. Super. 2017) (stating that "in any case, **civil or criminal**, evidence of conduct, circumstantial evidence, and logical inferences may suffice to prove certain facts") (citation omitted, some formatting altered, and emphasis added)).

*Reese* involved charges of criminal contempt,[3] and the issue was the violation of a protective order and the improper release of secret information leaked to the media. *Reese*, 156 A.3d at 1253. Reese was a Senior Supervisory Special Agent in the Executive Protective Detail for former Pennsylvania Attorney General Kathleen G. Kane. *Id.* The Commonwealth alleged that Reese was in criminal contempt of the protective order which prohibited employees from accessing certain Grand Jury information because Reese conducted searches of the Office of Attorney General's (OAG) email archive system to gain access to information Reese was prohibited from obtaining. *Id.* at 1253-54. Reese countered that he could not be held in contempt because he did not have notice of the protective order, and the Commonwealth could not establish wrongful intent. *Id.* at 1257.

This Court noted that Reese was the head of Ms. Kane's security detail and her driver, Reese and Ms. Kane spent a great deal of time together and had a close working relationship, and Reese was one of Ms. Kane's most trusted employees. *Id.* at 1258. Applying context and the common sense factor noted above, the *Reese* court concluded:

> Thus, the evidence reflects [Reese] was a close confidant of Ms. Kane, that she made it a priority to challenge the protective order,

---

[3] A charge of indirect criminal contempt consists of a claim that the contemnor violated a court order outside the presence of the court. *Reese*, 156 A.3d at 1258. The elements of indirect criminal contempt are as follows: "1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." *Id.* (citation omitted).

and that the order was widely discussed among those surrounding [Reese]. The evidence further demonstrates that, after the court issued the protective order, [Reese] deliberately chose specific search terms that on their face appear directed at gaining information pertaining to the Grand Jury, and not simply targeted at identifying leaks. [Reese's] searches returned emails with subject lines directly relating to the investigation, including "Protective Order." [Reese] then opened many of these emails, some of which discussed in detail and quoted from the protective order. [Reese] gained real time information relating to Grand Jury activity, in violation of the protective order's prohibition on OAG employees accessing any "information pertaining to the Special Prosecutor's investigation." Under such circumstances, we find ample evidentiary support for the trial court's determination that [Reese] had notice of the protective order, and that he possessed the wrongful intent to violate that order.

*Reese*, 156 A.3d at 1260 (citation omitted formatting altered); *see also Grekis v. Grekis*, 2022 WL 457392, at *5 (Pa. Super. filed Feb. 15, 2022) (unpublished mem.) (applying the context considerations from *Reese* in affirming a custody court's order denying the mother's petition for civil contempt of a custody order filed against the father on the basis that the mother failed to show that the father acted with wrongful intent upon examining the context in which the father's actions were made); *and Ahrens v. Ahrens*, 2022 WL 390678, at *3-6 (Pa. Super. filed Feb. 9, 2022) (unpublished mem.) (applying the context considerations from *Reese* in denying the father's petition for contempt of a custody order filed against the mother).[4]

_____

[4] *See* Pa.R.A.P. 126(b)(1)-(2) (stating that non-precedential decisions filed by this Court after May 1, 2019 may be cited for persuasive value).

- 7 -

In the instant case, we conclude that the trial court failed to consider the context of Mother's actions when it found her in contempt. Indeed, context is central to our review in this case. Here, the trial court found that Mother provided a reason for failing to ensure that J.A.L. entered the car on August 5, 2021, based on her statement that "she was unable to get [J.A.L.] in the car[.]" Order, 9/16/21, at 5. However, the trial court subsequently concluded that Mother provided no reason for failing to ensure that J.A.L. entered Father's car on August 12 or 13, 2021. *Id.* This conclusion is not supported by the record.

Mother's reason for being unable to get J.A.L. to enter Father's car on August 12 or 13, 2021 was similar, if not identical, to the reason she provided a week earlier. Specifically, Mother stated that she could not force J.A.L., her physically larger and stronger teenage son, to get into a car, and at the hearing on September 10, 2021, the following exchange occurred:

> [Mother's Counsel]: Are you able to physically force [J.A.L.] into your vehicle?
>
> [Mother]: No, I'm not.

R.R. at 145a (quoting N.T., 9/10/21, at 73).

On this record, we conclude that because Mother was unable to force J.A.L. into a car on August 5, 2021, she clearly remained unable to do so a week later. Therefore, both common sense and the context of the circumstances support the conclusion that Mother had sufficient reason for failing to comply with the custody order.

Moreover, the record reflects that a police officer was unable to convince J.A.L. to get into Father's car on August 12 or 13. J.A.L. testified that the police officer told him that the police could not physically remove J.A.L. from Mother's house and place him in Father's car unless J.A.L. was in danger at Mother's house. R.R. at 80a (N.T., 9/10/21, at 8). Additionally, Father similarly testified that when the police were called to assist in the custody exchange, the police officer could not coerce J.A.L. into Father's car. R.R. at 101a (N.T., 9/10/21, at 29).

For these reasons, we conclude that the record establishes no more than a mere showing of noncompliance, which is insufficient to prove civil contempt. *See Thomas*, 194 A.3d at 226; *Sutch*, 142 A.3d at 68. As such, Father failed to establish wrongful intent in Mother's inability to get J.A.L. into Father's car. *See Reese*, 156 A.3d at 1260; *Grekis*, 2022 WL 457392, at *5; and *Ahrens*, 2022 WL 390678, at *3-6. On this record, given the context of the factual circumstances presented, we are constrained to conclude that the trial court abused its discretion in finding Mother in civil contempt for violating the custody order. Accordingly, we reverse the trial court's order finding Mother in civil contempt.

Order reversed.

Judge Bowes joins the memorandum.

Judge Colins noted dissent.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: 6/16/2022