J-A18005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIK SCHARRITTER | : | |
| | : | |
| Appellant | : | No. 1251 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 12, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-MD-0000691-2020

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED: OCTOBER 6, 2021**

Appellant, Erik Scharritter, appeals from the judgment of sentence entered on November 12, 2020.  After careful consideration, we affirm.

Appellant was subject to a protection from abuse ("PFA") order, which mandated that he stay at least 100 yards away from the residence belonging to his estranged wife, Terra Scharritter.  In September 2020, the Commonwealth accused Appellant of violating the PFA order and charged Appellant with indirect criminal contempt.  Essentially, the Commonwealth claimed, Appellant willfully violated the order when, after he mowed the lawn of Ms. Scharritter's next-door neighbor, he stayed within 100 yards of Ms. Scharritter's residence.

Prior to Appellant's indirect criminal contempt hearing, Appellant and the Commonwealth stipulated that, before Appellant mowed the lawn, Appellant's attorney "told [Appellant] that he could cut the grass at the next

door neighbor's house." N.T. Hearing, 10/26/20, at 9. The question during the hearing and on appeal centers upon whether, in the face of this advice, Appellant acted with the "wrongful intent" necessary to support an indirect criminal contempt conviction.

At the hearing, the Commonwealth first presented the testimony of Ms. Scharritter. Ms. Scharritter testified that, at approximately 3:35 p.m. on the day in question, she drove home from work and saw Appellant's truck parked in front of her house. N.T. Hearing, 11/10/20, at 5. She testified that Appellant's "grass-cutting trailer" was attached to his truck and that the trailer was blocking half of her driveway. *Id.* at 5 and 10.

Ms. Scharritter testified that, when she first saw Appellant, he was "talking to [her] next door neighbor." *Id.* at 5-6. She testified:

> So I pulled into the driveway thinking he would leave. He did not. So I got out of my car, very quickly ran to the house, locked the door, and called the cops. That was what I was advised to do by my attorney if there was any violation of the PFA. [Appellant] was out there talking to the neighbor for about five [to seven] minutes.

*Id.* at 6.

Ms. Scharritter testified that Appellant left before the police arrived and that, during the time he was in front of her house, Appellant did not look at her or attempt to talk to her. *Id.* at 7.

During cross-examination, Ms. Scharritter testified that Appellant mows lawns as a second job and that, while she was married to Appellant, Appellant regularly mowed her next-door neighbor's lawn. *Id.* at 8-9.

- 2 -

The Commonwealth next presented the testimony of North Huntington Township Police Officer Scott Urias. Officer Urias testified that he was dispatched to Ms. Scharritter's home at approximately 3:37 p.m. on September 30, 2020, and arrived at Ms. Scharritter's home "about [five to six] minutes after the dispatch time." *Id.* at 14. He testified that, when he arrived at Ms. Scharritter's home, Appellant was not present. *Id.*

Officer Urias testified that, upon arrival, he spoke with Ms. Scharritter and Ms. Scharritter informed him that Appellant had been parked in front of her house. *Id.* at 15. The officer estimated that the distance "[f]rom the house to where [Ms. Scharritter] described [Appellant's] vehicle and trailer were" to be "about 30 yards." *Id.* at 15-16. Further, Officer Urias testified that he spoke with Ms. Scharritter's neighbor and the neighbor told the officer that "[the neighbor] did speak with [Appellant] and[,] as described[, the neighbor] stated that [Appellant] cut the grass" of another neighbor. *Id.* at 16. Officer Urias testified that he "also observed freshly cut grass." *Id.*

Following Officer Urias' testimony, the Commonwealth rested its case and Appellant did not present any evidence. The trial court found Appellant guilty of indirect criminal contempt and, as a sanction for this conviction, the trial court extended the PFA order for an additional year.[1] *Id.* at 20-22; *see also* 23 Pa.C.S.A. § 6114(b)(4) ("Upon conviction for indirect criminal contempt and at the request of the plaintiff, the court shall also grant an

---

[1] 23 Pa.C.S.A. § 6113.

extension of the protection order for an additional term"). As the trial court later explained, it found Appellant guilty of indirect criminal contempt because:

> Appellant had notice of the 100 yard provision [in the PFA order]. He was clearly aware of the provision, as he asked his counsel if he could cut his former neighbor's grass. . . . Appellant's reliance on his attorney's statement that he could cut the grass [does not] strip away [his] wrongful intent of appearing at [Ms. Scharritter's] residence.
>
> [Further, even if the attorney's stipulated advice could constitute] an affirmative defense to the crime, the facts still support [the conclusion] that Appellant had the requisite wrongful intent beyond a reasonable doubt. Appellant did not simply cut the grass and leave. Appellant parked his truck in front of [Ms. Scharritter's] residence and partially blocked the driveway. He did not leave the area immediately after cutting the grass. Rather, he stayed and talked to [Ms. Scharritter's] next door neighbor, which led to [Ms. Scharritter] entering her house and calling the police.

Trial Court Opinion, 12/11/20, at 2-3.

Appellant filed a timely notice of appeal and now raises the following claim to this Court:

> A finding of [indirect criminal contempt] for violating a PFA order requires a showing of "wrongful intent." Appellant cut the grass of a long-time customer neighboring his wife's residence while she was at work. He did so following his attorney's mistaken advice that he could [do so] despite the [PFA order's] 100-yard-stay-away provision. Did the Commonwealth prove beyond a reasonable doubt a "wrongful intent" to violate the 100-yard provision?

- 4 -

Appellant's Brief at 5.[2]

Appellant's sole claim on appeal poses a challenge to the sufficiency of the evidence. A claim alleging that the Commonwealth introduced insufficient evidence presents a question of law. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Our standard of review is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[2] Appellant's Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal raised one issue:

> [D]id the Commonwealth prove beyond a reasonable doubt the requisite *mens rea* of "wrongful intent" to sustain a conviction for indirect criminal contempt?

Appellant's Rule 1925(b) Statement, 12/8/20, at 2.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

**Commonwealth v. Antidormi**, 84 A.3d 736, 756 (Pa. Super. 2014) (citations and quotation marks omitted); **see also Commonwealth v. Taylor**, 137 A.3d 611, 614 (Pa. Super. 2016) (*en banc*).

According to Appellant, the Commonwealth failed to establish, beyond a reasonable doubt, that he acted with wrongful intent when he violated the PFA order's 100-yard stay-away provision. Thus, Appellant claims, the evidence is insufficient to sustain his indirect criminal contempt conviction. **See** Appellant's Brief at 15-31.

A court may hold a defendant in indirect criminal contempt and punish him or her in accordance with the law where the police have filed charges of indirect criminal contempt against the defendant for violating a PFA order issued pursuant to the domestic relations code. **See** 23 Pa.C.S.A. § 6114.

A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. The role of criminal contempt and that of many ordinary criminal laws seem identical – protection of the institutions of our government and enforcement of their mandates. Thus, as with those accused [of] other crimes, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford.

- 6 -

> To establish indirect criminal contempt, it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the intent of the contemnor in committing the act must have been wrongful.

***Commonwealth v. Padilla***, 885 A.2d 994, 996-997 (Pa. Super. 2005) (citations and quotation marks omitted). "In a prosecution for criminal contempt, the Commonwealth has the burden of proving every element of the crime beyond a reasonable doubt." ***Matter of Johnson***, 359 A.2d 739, 742 (Pa. 1976).

Here, the PFA order clearly required that Appellant "stay at least [100] yards from [Ms. Scharritter's] residence." PFA Order, 8/20/20, at ¶ 15(A), *as amended by* Consent Order of Court, 9/9/20, at 1-2. Further, on appeal, Appellant does not contest the fact that: 1) the PFA order "was sufficiently clear to [Appellant] as to leave no doubt of the conduct prohibited;" 2) Appellant had notice of the order; and, 3) Appellant's actions were prohibited by the order. Instead, on appeal, Appellant claims only that the evidence was insufficient to prove that he acted with wrongful intent.

As our Supreme Court has held, "[a] contemner acts with wrongful intent if he knows or should reasonably be aware that his conduct is wrongful." ***Commonwealth v. Garrison***, 386 A.2d 971, 979 (Pa. 1978) (citations and quotation marks omitted). Further, the Pennsylvania Supreme Court explained:

> There is no contempt unless there is some sort of wrongful intent. A degree of intentional wrongdoing is an ingredient

of the offense of criminal contempt. Willfulness is, of course, an element of criminal contempt and must be proved beyond a reasonable doubt. In *United States v. Seale*, 461 F.2d 345, 368 (7th Cir. 1972), the [United States Court of Appeals for the Seventh Circuit] thoroughly discussed the necessity for proof of the element of intent, and concluded that the minimum intent required is "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful."

*Commonwealth v. Washington*, 353 A.2d 806, 807 (Pa. 1976) (corrections and some citations and quotation marks omitted).

"[W]rongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order." *Commonwealth v. Reese*, 156 A.3d 1250, 1258 (Pa. Super. 2017). Finally, as this Court has declared, "[i]t is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly intentional before imposing sanctions of criminal contempt." *Commonwealth v. Haigh*, 874 A.2d 1174, 1177 (Pa. Super. 2005) (emphasis omitted).

In arguing that the evidence was insufficient to prove wrongful intent, Appellant raises several subclaims in his brief. Specifically, he argues: 1) "[t]he fact that [Appellant] sought legal advice concerning what is permissible conduct under the court's order signals a conscientious effort to respect the court's authority;" 2) "[t]he fact that [Appellant] cut the grass while [Ms. Scharritter] was at work further signals an effort to stay away from [her];" 3) Appellant's "acts once within the prohibited 100-yard range of [Ms. Scharritter's] residence were left so undeveloped by the Commonwealth to be

of significance, and they're inconsequential in view of the mistaken legal advice that caused [Appellant] to violate the court's order in the first place;" 4) "[t]he stipulated and undisputed fact of counsel's mistaken advice is a contextual circumstance that negates any wrongful intent by [Appellant];" and, 5) "[t]he trial court stretch[ed] precedent to find a wrongful intent that's simply not apparent from the evidentiary record." Appellant's Brief at 15-31. We will review Appellant's subclaims in the order listed above.

Appellant's first two subclaims on appeal appear to challenge the weight the trial court afforded certain pieces of evidence. Specifically, Appellant claims that the trial court assigned too little weight to "[t]he fact that [Appellant] sought legal advice concerning what is permissible conduct under the court's order" and "[t]he fact that [Appellant] cut the grass while [Ms. Scharritter] was at work." *Id.* at 16 and 20. In this sufficiency review, however, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Antidormi*, 84 A.3d at 756 (citations and quotation marks omitted). As such, Appellant's first two subclaims necessarily fail.

Moreover, to the extent Appellant claims that his pursuit of legal advice and his "cut[ting] the grass while [Ms. Scharritter] was at work" "vitiate" his wrongful intent, Appellant is incorrect. *See* Appellant's Brief at 20. Our standard of review requires that we "view[] all the evidence admitted at trial in the light most favorable to [the Commonwealth, as] the verdict winner." *Antidormi*, 84 A.3d at 756 (citations and quotation marks omitted). Viewed in the proper light, Appellant's pursuit of legal advice could be seen – not as

"signal[ing] a conscientious effort to respect the court's authority" (which is how Appellant wishes the evidence to be viewed) – but, rather, as a premeditated, bad faith attempt by Appellant to insulate himself from the legal repercussions of appearing within 100 yards of Ms. Scharritter's home and violating the PFA order. Further, the mere fact that Appellant "cut the grass while [Ms. Scharritter] was at work" does not demonstrate a lack of wrongful intent, as Appellant was still within 100 yards of Ms. Scharritter's residence (and blocking Ms. Scharritter's driveway) when Ms. Scharritter returned home from work. Thus, to the extent Appellant's first two subclaims challenge the sufficiency of the evidence, Appellant's claims fail.

We will consider Appellant's final three subclaims together. Essentially, Appellant claims that the evidence is insufficient to support his conviction because his "acts once within the prohibited 100-yard range of [Ms. Scharritter's] residence were left so undeveloped by the Commonwealth to be of significance;" counsel's "mistaken advice . . . negates any wrongful intent by [Appellant];" and, precedent does not support Appellant's conviction. Appellant's Brief at 16. These claims fail.

As to the comprehensiveness of the record evidence, Appellant first claims that the Commonwealth failed to present any evidence regarding the "grass-cutting trailer," which was attached to Appellant's truck and, as Ms. Scharritter testified, was blocking half of her driveway when she returned home. Appellant claims that, without this evidence, the Commonwealth could not demonstrate that Appellant "had any cognizance of the fact that [Ms.

- 10 -

Scharritter] was even home" when he was there, as the trailer might have obstructed his rear view. Appellant's Brief at 17. This claim immediately fails, as Appellant was found guilty of indirect criminal contempt for violating the provision of the PFA order, which prohibited him from being within 100 yards of Ms. Scharritter's **residence** – not her person. *See*, *e.g.*, Trial Court Opinion, 12/11/20, at 2-3; *see also Reese*, 156 A.3d at 1258 ("wrongful intent can be imputed to a defendant **by virtue of the substantial certainty that his actions will violate the court order**") (emphasis added).

Further, Appellant's claim that he was unaware "of the fact that [Ms. Scharritter] was even home" strains credulity and is contrary to our standard of review.

Ms. Scharritter testified that, when she arrived home from work, she saw Appellant, sitting in his truck in front of her house – with the truck's trailer blocking half of her driveway – simply speaking with her next-door neighbor. She also testified that, after she drove up her driveway and "ran to the house," Appellant stayed there, speaking with the neighbor, for "about five [to seven] minutes." Officer Urias testified that Appellant was approximately 30 yards from Ms. Scharritter's home when all of this occurred. Moreover, Ms. Scharritter testified that, when she pulled into her driveway, she thought Appellant "would leave." N.T. Hearing, 11/10/20, at 6 ("So I pulled into the driveway thinking he would leave. He did not").

Viewing this evidence (and all reasonable inferences that may be gleaned from this evidence) in the light most favorable to the Commonwealth,

- 11 -

Appellant's claim that he was unaware of the fact that Ms. Scharritter was home at the time fails. Certainly, the evidence demonstrates that Appellant was sitting in his truck, with his window open, and speaking to his neighbor mere feet from the entrance to Ms. Scharritter's driveway. Further, it is uncontested that Appellant knew the PFA order prohibited him from being in that particular location. Finally, Ms. Scharritter believed that Appellant was aware of her presence. N.T. Hearing, 11/10/20, at 6 ("So I pulled into the driveway thinking he would leave. He did not"). Viewing these facts in the light most favorable to the Commonwealth, Appellant undoubtedly heard and was aware of Ms. Scharritter's vehicle when it approached and then drove up the driveway mere feet from his location. Appellant's claim to the contrary violates our standard of review and thus fails.

Appellant also claims that, since the Commonwealth did not call, as a witness, the neighbor to whom Appellant was speaking at the time Ms. Scharritter returned home, there is no evidence as to "why [Appellant] remained present outside [Ms. Scharritter's] residence minutes after she arrived home from work." Appellant's Brief at 18. According to Appellant:

> It [] leaves to the imagination the neighbor's positioning at [Appellant's] truck as the two were talking. Was the neighbor closest to the driver side or passenger side of [Appellant's] truck? Did he block the side mirrors? Did the neighbor detain [Appellant] with conversation asking how he's been or why he hasn't been around? . . . [T]hese facts remain inconsequential . . . because but for [Appellant's] reliance on counsel's mistaken advice he wouldn't have been in violation of the court's order in the first place.

*Id.*

Again, for Appellant's suppositions to carry any weight in this appeal, we would be required to view the evidence in the light most favorable to him. However, that would directly contravene our standard of review.

There is simply no evidence that the neighbor detained Appellant, prevented Appellant from moving his truck down the street, or refused to allow the conversation with Appellant to occur outside of the 100-yard stay-away zone. Rather, viewing the testimony in the light most favorable to the Commonwealth, the evidence merely demonstrates that Appellant and the neighbor were engaged in a neighborly conversation. *See* N.T. Hearing, 11/10/20, at 5-6 (Ms. Scharritter testified that, when she first saw Appellant, he was "talking to [her] next door neighbor") & 15-16 (Officer Urias testified that he spoke with Ms. Scharritter's neighbor and the neighbor told the officer that "[the neighbor] did speak with [Appellant]").

Further, any claim that Appellant's presence in front of Ms. Scharritter's home "would not have occurred" "but for [Appellant's] reliance on counsel's mistaken advice" fails. *See* Appellant's Brief at 27-29. It is true the parties stipulated that, before Appellant mowed the next-door neighbor's lawn, Appellant's attorney "told [Appellant] that he could cut the grass at the next door neighbor's house." N.T. Hearing, 10/26/20, at 9. However, even if an attorney's advice could, potentially, negate a finding of wrongful intent, it does not do so here. Certainly, Appellant does not contest the fact that he was aware of the 100-yard stay-away provision and Appellant's attorney never

- 13 -

advised Appellant that he could park his vehicle in front of Ms. Scharritter's home – let alone that Appellant could block half of her driveway with his vehicle. Indeed, as the trial court explained:

> Appellant did not simply cut the grass and leave. Appellant parked his truck in front of [Ms. Scharritter's] residence and partially blocked the driveway. He did not leave the area immediately after cutting the grass. Rather, he stayed and talked to [Ms. Scharritter's] next door neighbor, which led to [Ms. Scharritter] entering her house and calling the police.

Trial Court Opinion, 12/11/20, at 2-3.

As stipulated, the advice given by Appellant's counsel did not cause Appellant to violate the PFA order – the violations of the order occurred outside of counsel's advice. Thus, viewing the evidence in the light most favorable to the Commonwealth, the evidence is clearly sufficient to support the fact-finder's conclusion that Appellant acted with wrongful intent when, in violation of the PFA order, Appellant came within 100 yards of Ms. Scharritter's residence. **See Reese**, 156 A.3d at 1258 ("wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order"). Appellant's claims on appeal fail.[3]

---

[3] Appellant also claims that the trial court "stretch[ed] precedent" when it relied upon **Commonwealth v. Brumbaugh**, 932 A.2d 108 (Pa. Super. 2007), to support Appellant's conviction. **See** Appellant's Brief at 20-23. In **Brumbaugh**, the PFA order prohibited the defendant "from having any contact with the" minor victim. **See Brumbaugh**, 932 A.2d at 110 (emphasis and some capitalization omitted). After the order was entered, the minor victim invited the defendant to a party and traveled to the party in the same car as the defendant. As a result of these actions, the defendant was found in violation of the PFA order. On appeal, the defendant claimed that he did
*(Footnote Continued Next Page)*

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Nichols joins.

Judge Musmanno files a Dissenting Statement.

_____

not act with "wrongful intent" because the minor victim invited him to the party. **See id.** We rejected this argument and held:

> [the defendant's] act was clearly volitional, or knowingly made, and wrongful intent can be imputed by virtue of the substantial certainty that by choosing to accept the victim's invitation to travel with her in the same vehicle to a party, he would be in contact with her in violation of the PFA Order.

**Id.** at 111.

According to Appellant, **Brumbaugh** does not apply to this case because, prior to violating the PFA order, Appellant "sought advice from his attorney" – not the subject of the PFA order – and Appellant "acted on his attorney's mistaken advice." Appellant's Brief at 23.

As explained above, in the case at bar, the parties merely stipulated that, before Appellant mowed the next-door neighbor's lawn, Appellant's attorney "told [Appellant] that he could cut the grass at the next door neighbor's house." N.T. Hearing, 10/26/20, at 9. However, the trial court found that Appellant violated the PFA order when – after Appellant was finished cutting the grass – Appellant "parked his truck in front of [Ms. Scharritter's] residence and partially blocked the driveway." Trial Court Opinion, 12/11/20, at 2-3. As the violations of the order occurred outside of counsel's advice, Appellant's legal premise – that he "acted on his attorney's mistaken advice" – is unsupported by the record and, thus, Appellant's argument on appeal fails.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/6/2021