J-A22016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| MELODY J. AHRENS | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| JEFFREY AHRENS, JR. | : | | |
| | : | | |
| Appellant | : | No. 631 MDA 2021 | |

Appeal from the Order Entered May 6, 2021
In the Court of Common Pleas of York County Civil Division at No(s):
2019-FC-001534-03

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:            **FILED: FEBRUARY 9, 2022**

Appellant, Jeffrey Ahrens, Jr., ("Father") appeals from the May 6, 2021 order granting Melody J. Ahrens ("Mother") sole legal and sole physical custody of W.A.,[1] a child, born April in 2004; sole legal custody and primary physical custody of R.A., a child, born in July 2006; and shared legal custody and primary physical custody of J.A., a child, born in July 2008, and V.A., a child, born in October 2010, (collectively, "the children") and denying Father's petition for modification of custody and his petition for contempt.  We affirm.

The record demonstrates that on September 18, 2019, Mother filed a complaint for custody seeking "shared legal custody and primary physical custody" of the children and requested the trial court "confirm custody of the

_____

[1] The record demonstrates that W.A.'s name assigned at birth was L.A., and his sex assigned at birth was female.  W.A. identifies as male and is known as W.A.  As such, W.A.'s pronouns are he/him.

children in accordance with the final protection from abuse ("PFA") order issued August 26, 2019."[2]  Custody Complaint, 9/18/19.  On December 4, 2019, the trial court entered an interim custody order that, *inter alia*, granted Mother and Father shared legal custody, granted Mother primary physical custody of the children, and granted Father partial physical custody of the children for a period of four to six hours on either Saturday or Sunday of each weekend.  Interim Order for Custody, 12/4/19.  On January 23, 2020, Mother and Father entered into a stipulation and agreement of custody whereby Mother and Father agreed, *inter alia*, to share legal custody of the children, that Mother had primary physical custody of the children, and that Father had partial physical custody of the children for three hours or more, as tolerated by the children, on either Saturday or Sunday of each weekend.  Stipulation and Agreement, 1/23/20.  On January 24, 2020, the trial court adopted these agreed-upon custody arrangements as the terms of its interim custody order. *See* Interim Order for Custody, 1/24/20.

On June 16, 2020, Father filed a petition to modify the January 24, 2020 interim custody order, seeking "unsupervised partial physical custody of the minor children[,] as well as an increase of his physical custodial time with [the minor children]."  Father's Petition to Modify Custody, 6/16/20, at ¶5.  On July

---

[2] In her custody complaint, Mother asserted that as part of the August 26, 2019 final PFA order that Father "agreed to have supervised custody of the minor children on Saturdays from [2:00 p.m.] to [6:00 p.m.] and Sundays from [1:00 p.m.] to [3:00 p.m.]"  Custody Complaint, 9/18/19, at ¶7.

24, 2020, the trial court entered an interim custody order that: (1) recognized "Father has not been able to exercise his rights of partial physical custody since March 2020[;]" (2) reaffirmed the January 24, 2020 interim custody order; (3) ordered that Father's periods of partial physical custody resume immediately (Father's partial physical custody was "a minimum of three [] hours each weekend"); and (4) ordered that the parties begin family reunification counseling between Father and the children. *See* Interim Order for Custody, 7/24/20. On November 18, 2020, Mother and Father entered into an agreement for interim custody in which the parties agreed, *inter alia*, that Father would have two additional hours of partial physical custody on Saturday or Sunday (depending on the day Father exercised his rights to partial physical custody) until December 5, 2020, and, thereafter, Father would have partial physical custody of the children from 10:00 a.m. Saturday through 7:00 p.m. Sunday on alternating weekends starting December 12, 2020. Stipulation for Interim Custody, 11/18/20. The trial court adopted the interim temporary stipulation for custody as its interim custody order on November 20, 2020.

On December 4, 2020, Father filed a petition for contempt of the November 20, 2020 interim custody order, alleging, *inter alia*, that "Mother refused to allow Father his scheduled [partial] physical custody of the minor

children without the presence of one of the parties['] adult children."[3] Father's Petition for Contempt, 12/4/20, at ¶6. On December 24, 2020, Father filed a second petition for contempt of the November 20, 2020 interim custody order asserting that Mother withheld custody of the children from Father on November 27, 2020, November 29, 2020, and December 12, 2020, through December 13, 2020. Father's Second Petition for Contempt, 12/24/20, at ¶¶5, 7.

On January 22, 2021, Mother filed a petition for special relief asking the trial court to excuse R.A. from visitation with Father for mental health reasons. Mother's Petition for Special Relief, 1/22/21, at ¶7. The trial court granted Mother's petition for special relief on February 4, 2021, and ordered that Father's visitation with R.A. was suspended until the contempt hearing scheduled on February 23, 2021. Trial Court Order, 2/4/21.

The trial court conducted a joint custody and contempt hearing in which both Mother and Father testified and were represented by counsel.[4] On May 6, 2021, the trial court entered a final custody order in which the trial court (1) denied Father's petitions for contempt on the basis that "the testimony and exhibits do not establish wrongful intent by Mother in the instances when

_____

[3] As of December 4, 2020, in addition to the aforementioned children, Mother and Father had four adult children who were not the subject of the November 20, 2020 custody order.

[4] The joint custody and contempt hearing was held on February 22, 2021, February 23, 2021, and April 16, 2021.

Father alleges that Mother denied him custody time[;]" (2) granted Mother sole legal and sole physical custody of W.A. with Father being "entitled to visitation with [W.A.] only if and when [W.A.] so chooses[;]" (3) granted Mother sole legal custody and primary physical custody of R.A. with Father having partial physical custody "on alternate Saturdays from 10:00 a.m. until 7:00 p.m., and on alternate Sundays on weekends when Father does not have Saturday custody from 10:00 a.m. until 6:00 p.m.[; and]" (4) granted Mother and Father shared legal custody of J.A. and V.A. with Mother having primary physical custody and Father having partial physical custody "on alternate Saturdays from 10:00 a.m. until 7:00 p.m., and on alternate Sundays on weekends when Father does not have Saturday custody from 10:00 a.m. until 6:00 p.m."[5]  Final Order of Custody, 5/6/21, at 1-4.  This appeal followed.[6]

Father raises the following issues for our review:

[1.    Whether] the trial court erred as a matter of law [or] abused its discretion in failing to find Mother in contempt of the existing orders for custody even though the trial court found that Mother did not cooperate with Father's periods of [partial] physical custody[?]

[2.    Whether,] in contravention of testimony and evidence presented at the time of trial, the trial court erred in

---

[5] The May 6, 2021 final custody order also addressed, *inter alia*, physical custody during the holidays, transportation of the children, telephone calls with the children, the children's extracurricular activities, a prohibition on disparaging remarks by one parent against the other, and the need for counseling and parenting classes.  Final Order of Custody, 5/6/21, at 4-13.

[6] Both Father and the trial court complied with Pa.R.A.P. 1925.

concluding that Mother has not attempted to turn the
children against Father[?]

[3.    Whether] the trial court erred as a matter of law [or] abused
its discretion in determining that Father's employment
outside the home [and] work schedule impacted Father's
ability to exercise [partial] physical custody of the children
insomuch as the trial court failed to award any overnight
periods of [partial] physical custody to Father[?]

Father's Brief at 5 (extraneous capitalization omitted).

Father's first and second[7] issues challenge the trial court's order denying

his two petitions for contempt.  *Id.* at 12-18.  In reviewing orders denying, or

granting, petitions for contempt, this Court is

limited to determining whether the trial court committed a clear
abuse of discretion.  Moreover, much reliance is given to the
discretion of the trial [court].  Accordingly, we are confined to a
determination of whether the facts support the trial court's
decision.  Also[,] in civil contempt proceedings[,] the complaining
party has the burden of proving by a preponderance of the
evidence that a party violated a court order.

_____

[7] In his brief, Father presents his argument regarding his second issue within
the section dedicated to a discussion of his petitions for contempt.  Father's
Brief at 17.  He does not present a specific argument regarding his second
issue within the context of the trial court's purported error in awarding final
custody even though consideration of "attempts of a parent to turn the child
against the other parent" is one of the 16 factors to be considered by the trial
court in determining the best interests of the children when awarding custody.
*Id.* (setting forth a one paragraph argument in support of his second issue at
the end of his discussion pertaining to his petitions for contempt but before
the discussion pertaining to the final custody order); *see also* Pa.R.A.P.
2119(a) (requiring the argument section of an appellate brief to be "divided
into as many parts as there are questions to be argued").  Based upon the
format of his brief, it is unclear within which context, petitions for contempt
or final custody order, Father raises his second issue.  Therefore, we consider
Father's second issue within the context of both his challenge to the trial
court's order denying his petitions for contempt and the final custody order.

*Chrysczanavicz v. Chrysczanavicz*, 796 A.2d 366, 368-369 (Pa. Super. 2002) (citations, quotation marks, and original brackets omitted).

> Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he[, or she,] is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa. Super. 2017) (*en banc*) (citations, quotation marks, and original brackets omitted). A "mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." *Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, 68 (Pa. Super. 2016), *appeal denied*, 163 A.3d 399 (Pa. 2016). "[T]he act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent." *Sutch*, 142 A.3d at 68 (stating, "[u]nless the evidence establishes an intentional disobedience or an intentional disregard of the lawful process of the [trial] court, no contempt has been proven" (citation and original brackets omitted)). "[W]hen making a determination regarding whether a [party] acted with wrongful intent, the [trial] court should use common sense and consider context, and wrongful intent can be imputed to a [party] by virtue of the substantial certainty that his[, or her,] actions will violate the court order." *Commonwealth v. Reese*, 156 A.3d 1250, 1258 (Pa. Super. 2017) (stating, "in any case, civil or criminal, evidence of conduct, circumstantial evidence,

and logical inferences may suffice to prove certain facts" (original quotation marks, brackets, and ellipsis omitted)).

Here, Father contends that Mother withheld partial physical custody of the children from him on November 27, 2020, and December 12, 2020 through December 13, 2020, in violation of the interim order of custody.[8] Father's Brief at 12. Father asserts that "Mother attempted to justify her actions in withholding custody by insisting an adult be present with the minor children during Father's period of physical custody, which was not required by any of the prior [custody orders.]" *Id.* at 13. Father argues that Mother, in her testimony, acknowledged notice of the November 20, 2020 interim custody order and that Mother, of her own volition and with wrongful intent, did not take the children to the exchange site on November 27, 2020, and December 12, 2020, as required by the interim custody order. *Id.* at 13-16. Father contends the trial court erred and abused its discretion in finding that Mother did not act with wrongful intent when she failed to comply with the

_____

[8] Although Father's second petition for contempt alleged that Mother violated the November 20, 2020 interim custody order by withholding custody of the children from Father on November 29, 2020, Father does not put forth an argument regarding this specific date in his appellate brief. *See* Father's Brief at 12 (stating that, Father's two petitions for contempt involved the withholding of the children from Father on November 27, 2020, and December 12, 2020, to December 13, 2020). Therefore, we find Father waived any challenge of the trial court's denial of the petitions for contempt as it pertains to November 29, 2020. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (stating, "[i]t is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal").

November 20, 2020 interim custody order. *Id.* at 16 (stating, "[i]t is beyond comprehension how the trial court can conclude Mother failed to act with wrongful intent when Mother attempted to justify her actions by any means possible and then contradicted her own testimony wherein, she testified she took the children to the exchange [site] and then admitted she did not" (extraneous capitalization omitted)).

In denying Father's two petitions for contempt, the trial court held that,

the testimony and exhibits do not establish wrongful intent by Mother in the instances when Father alleges Mother denied him custody time. The [trial] court does have some concerns with regard to Mother fully cooperating with Father regarding the terms of prior [custody] orders and wants to affirm that it expects the parties to adhere to the terms of its [custody] orders, including the provisions of the final custody order[.]

Trial Court Opinion, 5/6/21, at 9 (extraneous capitalization omitted).

Regarding the dates in question, the November 20, 2020 interim custody order stated, in pertinent part, as follows:

On alternating weekends, beginning December 12, 2020, and continuing thereafter, Father shall have [partial] physical custody of the children from Saturday at 10:00 [a.m.] through Sunday at 7:00 [p.m.]

[On] November 27, 2020, Father shall have physical custody of the children from 10:00 [a.m.] to 7:00 [p.m.]

. . .

Transportation. The parties agree to continue a public exchange location with the children until commencement of Father's alternating weekends on December 12, 2020. Thereafter, the party beginning custody shall be responsible for transporting the children[.]

. . .

> All other provisions of the September [15], 2020 [o]rder remain in full force and effect.

Interim Custody Order, 11/20/20, (formatting omitted) (adopting the parties' stipulation for interim custody filed on November 18, 2020).

The September 15, 2020 order affirmed the custody arrangements set forth in the July 24, 2020 interim custody order with the modification as to "how the parties were to initiate family counseling between Father and the children." **See** Trial Court Order, 9/15/20, at 2; **see also** N.T., 9/14/20, at 2-3 (stating, "the interim [custody] order dated July 24, 2020, remains in full force and effect with this slight modification regarding the children and Father participating in family counseling" and, thereupon, setting forth the conditions of the modification).

The July 24, 2020 order stated, in pertinent part, as follows:

> There is a PFA [order] in place between the parties, naming Mother as the protected party. The PFA [order] was entered by agreement of the parties on August 26, 2019. The PFA [order] was extended on November 1, 2019[,] after the filing of an [indirect criminal contempt] charge against Father. He was not convicted of a violation and the parties reached an agreement to extend the PFA [order] to August 26, 2020. The PFA [order] provides for communication *via* [cellular telephone text messaging] between the parties for purpose of custody only. The PFA [order] provides for Father to have **supervised rights of physical custody of the children**, however, this provision was reached by agreement of the parties and [was not a] finding of the [trial] court. The children are not protected under the PFA [order].
>
> . . .
>
> The January [24], 2020 [interim custody o]rder is hereby reaffirmed in its entirety as an interim [custody] order, with the following modifications:

- 10 -

1. Father's periods of partial physical custody shall resume immediately. He shall, at least one week prior to his period of partial physical custody, identify which day he intends to exercise custody and provide Mother with a list of five [] potential public locations for the period of custody to occur. These places shall be within a [25] minute or [15] mile radius of Mother's residence. Mother shall choose one of the options as the location that Father's period of custody shall occur. His periods of custody shall be for a minimum of three [] hours each weekend.

2. Family/Reunification [c]ounseling shall begin immediately between Father and the children. . . .

The parents are free to modify the terms of this [interim custody] order but in order to do so[,] the [trial c]ourt makes it clear that both parents must be in complete agreement to any new terms. That means both parents must consent to what the new terms of the custody arrangement or visitation schedule shall be.

In the event that one or the other [parent] does not consent to a change, that does not mean each follows [his, or her,] own idea as to what [he, or she, thinks] the arrangements should be. The reason this [interim custody o]rder is set out in detail is so both parents have it to refer to and to govern [their] relationship with the children and with each other in the event of a disagreement.

Interim Custody Order, 7/24/20, at 3-6 (original emphasis omitted).

The January 24, 2020 interim custody order stated, in pertinent part, as follows:

Father shall have partial physical custody of the children on weekends, either Saturday or Sunday, for a period of three [] hours or more as tolerated by the children. He shall provide Mother at least seven [] days advance notice of which day and at which times he will exercise custody each weekend. The location of his partial custody shall be as may be agreed upon by both parties, which shall be in a location not more than [15] miles from Mother's residence.

The children have requested, and the parties agree, that the children would be more comfortable **if their adult sister [] is present for Father's periods of custody.** While there is no

- 11 -

formal supervision requirement, it is encouraged that she should attend Father's periods of custody to supervise informally.

Interim Custody Order, 1/24/20 (emphasis added) (adopting the parties' stipulation agreement filed January 23, 2020).

At the April 16, 2021 custody hearing, Mother testified that, pursuant to the January 24, 2020 interim custody order, she understood that the children's adult sister was required to be present for Father's periods of partial physical custody. N.T., 4/16/21, at 57-59, 90-92. Mother further understood that each of the subsequent orders "stacked one [on] top of the other" and that the subsequent orders only set forth those custody provisions that had been modified or added by the trial court but, otherwise, all other provisions of the interim custody orders, including the January 24, 2020 interim custody order, remained in effect. *Id.* In other words, Mother believed the January 24, 2020 interim custody provision requiring adult supervision remained in effect because it was never specifically modified by subsequent interim custody orders.

As for Father's partial physical custody of the children on November 27, 2020, which was the subject of his first petition for contempt, Mother testified that she did not permit Father to have custody of the children because, *inter alia*, he refused to allow one of the children's adult siblings to attend the visitation period. *Id.* at 64-66. Specifically, Mother stated,

He did not get the children because per the agreement we made in January [2020,] and per the children's request, and distress, he didn't want an adult sibling there. He didn't want the child, who

- 12 -

just turned 18 [years old,] there, who had been a part of visitation for how many months, and it was causing all kinds of upheaval.

He was willing to take [J.A. and V.A.] and not take one of the [adult] siblings along, and because of the stress it was causing the children, I didn't send them.

*Id.* at 64. Father acknowledged that on November 27, 2020, both parties, as well as the children, arrived at the designated exchange site but that ultimately, after exchanging a series of text messages with Mother in the parking lot of the exchange site, he did not receive custody of the children. N.T., 2/22/21, at 66 (stating, "we [(Father and his fiancé)] were there in our vehicle and they [(Mother and the children)] were in the parking lot in their vehicle"). The text message exchange between Mother and Father, in sum, concerned Mother's insistence that an adult sibling attend the visitation and Father's refusal to permit the adult sibling to attend. ***See*** Father's Custody Hearing Exhibit 8 at 21-22, 26, 28.

Regarding Father's overnight physical custody of the children on December 12, 2020, through December 13, 2020, Mother stated that Father did not get custody of the children because, *inter alia*, he refused to include an adult sibling as part of the visitation. N.T., 4/16/21, at 64-66; ***see also*** Father's Custody Hearing Exhibit 8 at 49 (Father's text message) (stating, "[a]dult siblings being present is not mandated in the [custody] order and[,] as such, [an adult sibling] will not be attending for the first overnight visit").

Upon review, we concur with the trial court that Father failed to demonstrate by a preponderance of the evidence that Mother's actions on

November 27, 2020, and for the period of December 12, 2020, through December 13, 2020, constituted contempt of the November 20, 2020 interim custody order. Father failed to demonstrate that Mother's acts of denying him partial physical custody of the children on the aforementioned visitation dates were done deliberately and with wrongful intent. The January 24, 2020 interim custody order encouraged an adult sibling to be present during Father's periods of custody because the children felt that an adult sibling's attendance would make them feel more comfortable.[9] Mother believed that, while the subsequent interim custody orders modified or added certain provisions to the custody arrangement, the presence of the adult sibling during Father's physical custody of the children remained a requirement, even in the November 20, 2020 order, because it was never explicitly stated that Father's physical custody was to be unsupervised. Therefore, we discern no error of law or abuse of discretion in the trial court's finding that Mother did not act with wrongful intent in denying Father partial physical custody of the children on November 27, 2020, and for the period of December 12, 2020,

_____

[9] Although the January 24, 2020 interim custody order encouraged, but did not require, an adult sibling to be present during Father's periods of partial custody, it may be inferred that Father also viewed sibling-supervision to be a requirement because, on June 16, 2020, Father filed a petition seeking **unsupervised** custody. *See* Father's Petition to Modify Custody Order, 6/16/20, at ¶5 (stating, "Father seeks to modify the current order, more specifically, Father seeks unsupervised partial physical custody of the minor children").

through December 13, 2020.[10]   Consequently, Father's issues regarding his two petitions of contempt are without merit.

Father's second and third issues challenge the trial court's order, which Father contends, granted Mother, *inter alia*, sole physical custody of W.A. and primary physical custody of R.A., J.A., and V.A., and, in particular, denied Father's request for overnight periods of physical custody with the children.[11] Father's Brief at 18-25.

> In reviewing a custody order, our scope [of review] is of the broadest type[,] and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the [trial court that] viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions

---

[10] Furthermore, we find no merit in Father's claim that the trial court erred or abused its discretion in failing to hold Mother in contempt based on Father's assertion that Mother's refusal to allow Father his scheduled physical custody of the children was "part of Mother's ongoing effort to interfere in Father's relationship with the children," as alleged in his petitions for contempt. **See** Father's Petition for Contempt, 12/4/20, at ¶6; **see also** Father's Petition for Contempt, 12/21/20, at ¶7.  Because Mother did not act with wrongful intent in withholding physical custody of the children from Father, her actions cannot give rise to a claim of contempt asserting that Mother interfered with Father's relationship with the children.  Ultimately, it was Father's decision to refuse to allow an adult sibling to accompany the children during his visitation periods.

[11] Father does not challenge the trial court's determinations concerning legal custody.  Father's Brief at 18-25.  To reiterate, the trial court, in its May 6, 2021 final custody order, awarded Mother sole legal custody of W.A. and R.A., and awarded Mother and Father shared legal custody of J.A. and V.A. **See** Final Order of Custody, 5/6/21.

of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral[,] and spiritual well-being of the child.

***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013).

Section 5323(d) of the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, mandates that a trial court must articulate the reasons for its decision in awarding custody prior to the filing of a notice of appeal. 23 Pa.C.S.A. § 5323(d) (stating, "[t]he [trial] court shall delineate the reasons for its decision on the record in open court or in a written opinion or order"). Moreover, Section 5328(a) of the Child Custody Act sets forth explicit factors the trial court must consider when reaching its decision as follows:

In ordering any form of custody, the [trial] court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following: (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party[;] (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child[;] (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services)[;] (3) The parental duties performed by each party on behalf of the child[;] (4) The need for stability and continuity in the child's education, family life[,] and community life[;] (5) The availability of extended family[;] (6) The child's sibling relationships[;] (7) The well-reasoned preference of the child, based on the child's maturity and judgment[;] (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic

- 16 -

violence where reasonable safety measures are necessary to protect the child from harm[;] (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs[;] (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child[;] (11) The proximity of the residences of the parties[;] (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements[;] (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party[;] (14) The history of drug or alcohol abuse of a party or member of a party's household[;] (15) The mental and physical condition of a party or member of a party's household[;] (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a) (paragraph formatting omitted).

Here, Father asserts that the trial court "penalized" him by "denying him overnight periods of physical custody of the children simply because he works outside of the home."  Father's Brief at 19.  Father argues that "[t]here is no evidence of record to establish that there is a negative impact upon the children because Father works outside the home, or that the children are negatively impacted due to Father's absences from the home while at work." *Id.*  Father contends "his work schedule [or] other concerns are not a basis to severely restrict Father's time with the children to mere hours per week." *Id.* at 23.  Father further asserts that his "counsel engaged Mother in a discussion wherein Mother's testimony demonstrated that she was not willing to encourage a relationship between Father and the children." *Id.* at 17.

In so arguing, Father asks this Court to reweigh the trial court's factual findings and determinations with regard to the Section 5328(a) factors in favor

- 17 -

of Father's assertions that Mother "did not promote regular telephone contact between Father and the children" and "the fact that he works outside the home is not a reason to prevent Father from having overnight periods of contact with the children." *Id.* at 17, 22.  Specifically Father asks this Court to reweigh the trial court's factual findings regarding the eighth factor, which concerns attempts of one parent to turn the children against the other parent, and the twelfth factor, which pertains to a party's ability to care for the children or provide childcare.  This Court's role, however, "does not include making independent factual determinations," and we defer to the trial court on issues of credibility and weight of the evidence.  *M.J.M.*, 63 A.3d at 337.

A review of the trial court's analysis of the Section 5328(a) factors demonstrates that the trial court found the following:

**(1) Encouragement of Continuing Contact Between the Parties**

The [trial] court finds that this factor weighs slightly against Mother.  While Father alleged contempt by Mother for not allowing contact with the children, the [trial] court does not find that Mother's conduct rises to the level of contempt.  However, the [trial] court finds that Mother was not fully cooperative with Father to ensure that he saw the children as ordered.

**(2) Present and Past Abuse**

A [PFA] has been in effect since August 26, 2019[,] with Mother as the protected party, and has since been extended to May 3, 2024.  The [trial] court also heard testimony regarding physical abuse of one or more children by Father when the parties were still living together.

This factor weighs strongly against Father.

**(3) Parental Duties**

This factor weighs in favor of Mother. She was the primary caregiver while still living with Father, who was usually working and [was] the primary source of income for the family. Mother continues to perform most parental duties as the primary physical custodian.

**(4) Stability in Children's Education, Family Life[,] and Community Life**

The [trial] court finds that this factor weighs in favor of Mother. Mother continues to home school all four of the children, as she did with the agreement of Father in the past. Father has been minimally engaged in the children's education.

**(5) Availability of Extended Family**

The [trial] court finds that this factor weighs in favor of Mother. While the children have extended family on both sides, the testimony established that the children have more active engagement with the maternal family, although there is also some engagement with paternal family when visiting with Father.

**(6) Sibling Relationships**

This factor weighs in favor of Mother. The children have four adult siblings and one half-sibling. Contact with four of the five siblings is facilitated by Mother.

**(7) Well-reasoned Preference of the Children**

The [trial] court interviewed the children. [W.A.] expressed his clear desire to have no contact with Father for various reasons, which the [trial] court finds was substantiated and for good cause. [R.A.] expressed fear of Father, with significant anxiety and stress regarding overnight visits. [J.A. and V.A.] were most receptive to regular engagement with Father.

This factor weighs strongly in favor of Mother with regard to [W.A. and R.A.] and is neutral with regard to [J.A. and V.A.]

**(8) Attempts of Parent to Turn Children Against Other Parent**

The [trial] court heard no significant testimony regarding current attempts by one parent to turn the children against the other parent, although the parties' oldest adult son stated that Mother

did so when he was younger.  The [trial] court finds that this factor is not applicable.

**(9) Maintenance of Loving and Stable Relationship with Children**

The [trial] court has concerns regarding both parents' ability to understand the emotional needs of the children, with significant concerns regarding Father's ability to understand and meet those needs.  Mother has ensured that all four children are engaged in counseling and has made efforts to understand and meet their emotional needs.

The [trial] court is especially concerned about Father's prejudice against those who identify as members of the [LGBTQIA+[12]] community given that [W.A.] identifies as male and [R.A.] is gender questioning.  The [trial] court is[,] therefore[,] especially concerned with regard to Father's ability to address and support the physical and mental health of [W.A. and R.A.]

This factor weighs in favor of Mother and against Father.

**(10) Attendance to Children's Daily Needs**

The [trial] court finds that this factor weighs in favor of Mother.  As with factors 4 and 9, [*supra*], Mother is most engaged in ensuring that all of the children's needs are met, while Father [has not] appeared to have made any significant effort to even seek knowledge and understanding with regard to those needs.

**(11) Proximity of Residences**

The parties live approximately an hour and fifteen minutes apart, which allows for weekly custody exchanges.

**(12) Ability to Care for the Children or Make Child Care Arrangements**

This factor weighs slightly in favor of Mother.  She is at home full[-]time and has several family members and adult children who

---

[12] The LGBTQIA+ acronym is used to describe a person's sexual orientation or gender identity and stands for **L**esbian, **G**ay, **B**isexual, **T**ransgender, **Q**uestioning, **I**ntersex, **A**sexual, with the "+" representing all others with a sexual orientation or gender identity that is not represented.

are able to provide childcare. Father usually works all day but is able to make appropriate childcare arrangements.

### (13) Level of Conflict Between Parties and Ability to Cooperate

This factor weighs against both parties. There is a high level of conflict between them, as evidenced by the ongoing PFA [order that protects Mother]. The [trial] court will[,] therefore[,] be directing that the parties enroll in a high[-]conflict parenting class, *per* the [final custody order] that accompanies this [trial court] opinion.

### (14) History of Drug or Alcohol Abuse

There was no significant testimony regarding drug or alcohol abuse. This factor is not applicable.

### (15) Mental and Physical Condition of Party or Member of Party's Household

Mother is in counseling but the [trial] court finds that there are no significant mental or physical issues that would prevent either party from parenting. This factor is not applicable.

Trial Court Opinion, 5/6/21, at 5-9.

At the custody hearing, Father stated that he is employed as a truck driver and typically starts work at 6:00 a.m. or 7:00 a.m., is gone from his residence "most of the day," and works Monday through Friday of each work week. N.T., 2/22/21, at 14. Father testified that his employment typically requires two overnight commitments during his work week, which means that Father is able to come home after his work shift on only one of the five nights during a Monday-to-Friday work week. *Id.* at 14, 113. When Father does not have an overnight work commitment, he stated that he typically works twelve to fourteen hours that day. *Id.* at 113-114. Father stated that he does not work on the weekends and is able to take time off from work in the case of an

emergency with the children. *Id.* at 14-16. Father testified that his fiancé, who resides in the same residence as Father, would be "available to provide supervision for the children" when Father is away from home. *Id.* at 51. The record supports the trial court's factual findings and consideration of the Section 5328(a) factor regarding Father's ability to care for the children or make childcare arrangements when the children are in his physical custody. We will not reweigh the evidence in favor of Father's request for overnight physical custody of the children. Contrary to Father's assertion, the trial court did not "penalize" Father because he works away from the home. Rather, the trial court credited Father's testimony that while he works away from the home on occasion, he is able to make childcare arrangements. The trial court simply found that regarding this factor, Mother's ability to care for the children outweighed Father's ability because Mother remained at home full-time and had four adult siblings and other family members who could assist her in providing childcare.

Regarding Father's second issue challenging the trial court's consideration of Mother's attempts to turn the children against Father, we find this issue, within the context of the custody order, to be without merit. As discussed *supra*, Father was unable to have visitation with the children on several occasions because he would not permit an adult sibling to attend the visitation. Mother believed that an adult sibling was required pursuant to the various interim custody orders. To the extent Father argues that Mother denied him telephone calls with the children, Mother testified that the

- 22 -

telephone calls often caused anxiety with some of the children and that, although the interim custody order limited the telephone calls to 30 minutes, Father expected the children to participate in the communications for several hours. N.T., 2/23/21, at 286-287, 289. The trial court determined that there was "no significant testimony regarding current attempts by one parent to turn the [c]hildren against the other parent" and we concur. Trial Court Opinion, 5/6/21, at 7. Consequently, Father's issues are without merit.[13]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/09/2022

---

[13] Moreover, the record supports that trial court's factual findings and consideration of the remaining Section 5328(a) factors, including, *inter alia*, "Father's prejudice against those who identify as members of the [LGBTQIA+] community[.]" For example, Father acknowledged that he created a fictional character, which was depicted as wearing an executioner's hood and a black shirt, in an online forum. N.T., 4/16/21, at 111-112, 115-117. This fictional character, according to Father, was "antisocial across the board" and the fictional character in the online forum talked about "beating gay people[.]" *Id.* at 115, 117.